Curtis *vs.* Gibney.

(Decided 14th July, 1882.)

---

LAWRENCE L. CURTIS *vs.* GEORGE F. GIBNEY. LAWRENCE L. CURTIS *vs.* GEORGE F. GIBNEY, trading as G. FRANK GIBNEY & CO.

*Construction of a Contract—"Margin"—Principal and Agent—Interest.*

C., a grain dealer in the State of New York, made certain consignments of barley to G., a commission merchant in the City of Balti-

more, to be sold by the latter. These consignments were sold and accounts of the sales were rendered on the 10th and 18th of November, 1880, showing a balance due the consignor. On the 8th of November, 1880, G. telegraphed to C., "say, lowest net to you, twenty thousand. Delivering next thirty days, answer promptly." C. replied, "I don't think I have more that 10,000 bus. 4 rowed barley. Should want 87 net." On the following day, G. telegraphed to C. "Have sold the ten thousand four rowed to net you 87. See letter about shipping." The letter referred to was dated 10th November, and said: "Sold your 10,000 to net you your price 87c., which we consider a good sale. We sold it by average sample to be like last shipments. Now when you ship this barley, would like you to do as all our other customers do, say draw 5 day drafts on us, we accept same and pay them when due. By so doing you will oblige us. You need not be in a great hurry about shipping, so you get it in this month, still the sooner the better, as to have deal closed up. Please let us know if you have any more to offer." On the 19th of November, C. shipped to G. three cars of barley and drew a *sight* draft on him for the full amount due on the quantity shipped, at 87 cents per bushel, less freight; which draft was protested for non-acceptance. On the same day C. drew on G. at sight for the balance in his hands, as the proceeds of the barley previously sold, as shown by the accounts of sales before rendered. This draft was also protested for non-acceptance. On the 22nd of November, G. wrote to C. that the amount due the latter per said accounts of sales had been placed to the credit of C's account, and further stated: "your S't drafts with R. R. receipts attached came to hand to day, and we refused to pay the same, as you left no margin whatever. We will try and weigh barley, and telegraph you to-morrow what you may draw, Please hurry forward the balance of the contract as our parties are pushing us." The price of barley rose rapidly in the market. No remittance was thereafter made by G. to C., nor was any more barley sent by C., on account, as he stated in his subsequent letters, of the failure of G. to honor his drafts, or to remit to him the proceeds of his consignments. On the 9th of November, G. contracted to sell to S. 10,000 bushels of barley *at 90 cents per bushel,* upon a credit of four months. As the price of barley rapidly advanced, S. demanded of G. "to put up a margin on the contract," which was done by the latter giving to the former his promissory note payable on demand. In order to fulfil his contract with S., G. bought barley in the market at an advanced price, and in his account rendered against C. charged him with the barley thus pur-

Curtis *vs.* Gibney.

chased at the prices paid therefor. In cross actions brought by C. and G. each against the other, it was HELD:

1st. That C's reply to G's telegram of November 8th, did not authorize G. to sell 10,000 bushels of barley for and on account of C.

2nd. But after the receipt by C. of G's telegram of November 9th, and his letter of November 10th, his consignment to G. of three car loads of barley, could only be understood as a recognition, or ratification, by C. of the sale reported by the telegram and letter of November 9th and 10th.

3rd. That by the terms of the letter about shipping, which C. must be held to have assented to, he had no right to draw at sight, and could not therefore properly complain that his draft for the proceeds of the latter consignment was not paid.

4th. That his other draft for the cash balance in the hands of G., due him on account of previous consignments, ought to have been accepted and paid by G., and the latter had no legal excuse or justification for failing to pay the same.

5th. That in regard to the 10,000 bushels of barley, the contract between the parties, as evidenced by the correspondence, was that G. bound himself to pay to C. 87 cents a bushel net for the barley, and to accept and pay the drafts of the latter at five days for the same, without regard to the sale of the article made by him to S., or the prices or terms of payment by his purchaser.

6th. That assuming that the contract with S. was made by G. as agent or factor, and that, C. dealt with him in that capacity only, he had no legal right to retain the money of C. *as a "margin"* or security for the performance of the contract on the part of C., there being no such stipulation in the contract, and no evidence of any custom binding on C. to justify it.

7th. That upon G's failure to remit to C. the proceeds in his hands arising from the sale of the barley, according to the terms of his contract with C., the latter was not bound to make further consignments to him.

8th. That consequently C. could not be held liable for the loss incurred by G. growing out of the sale to S.

In the absence of proof of a contract to pay interest, or proof of a custom entitling the party thereto, interest can only be allowed in the discretion of the jury.

APPEALS from the Court of Common Pleas.

One of these actions was brought by the appellant against the appellee, and the other by the appellee against the appellant. In each case the claim arose out of the dealings between the parties in regard to certain sales of barley. The cases are stated in the opinion of the Court. By consent of counsel both cases were tried together under an agreement, that if a verdict should be rendered for the plaintiff in either case, a verdict should be rendered for the defendant in the other case.

*Exception.*—At the trial, George F. Gibney, the plaintiff in the first case, and the defendant in the second case, to maintain the issues joined on his behalf, put in evidence the following correspondence between himself and Lawrence L. Curtis, the defendant in said first case, and the plaintiff in the second case, consisting of telegrams, letters and postal cards, the genuineness of which was admitted by both parties:

BALTO., OCT. 30th, 1880.

L. L. Curtis, Esq.,

       Horseheads, N. Y.

Dear Sir:—Mr. John Boyd, one of my customers, handed us your letters and telegrams, and asked us to dispose of your barley at the best market price, and also to accept the drafts. He being a malster, could not do you justice in disposing of your barley, as they would not give him a fair market price for it. This is the reason he asked us to handle it for you. We wired you "to-day Boyd handed barley over to us for sale. Will advance seventy cents, freight inclusive. Send instruction at once, and now await your reply." If this barley is handed over to us, you can rest assured it will meet with our prompt attention. We will advance, as we wired you, 70c. f'gh. inclusive, but no more at present, as we consider this a fair margin. Awaiting your favor.

       Yours, &c.,

         G. FRANK GIBNEY & Co.

Curtis *vs.* Gibney.

*Telegram—Night Message.*

HORSEHEADS, N. Y., Oct. 30th, '80.

To G. Frank Gibney & Co.

Please protect drafts, and place barley to best advantage.

(Signed,)          L. L. CURTIS.

*Postal.*

To G. F. Gibney & Co.     HORSEHEADS, Nov. 2nd, '80.

Please report, as early as possible, what has been done with the drafts.

(Signed,)          L. L. CURTIS.

*Letter.*

To G. F. Gibney & Co.     HORSEHEADS, Nov. 4th, '80.

I have this day shipped you from Newfield Station, car — barley, in No. 2324, P. R. R., which you will please place, on arrival, at best advantage. Any figures less than 87, will lose me money. Report early. Will draw 400.00. 580 bus. in car.

(Signed,)          L. L. CURTIS.

*Telegram.*

L. L. Curtis,          BALTIMORE, Nov. 8th, '80.
          Horseheads, N. Y.

Say lowest net to you twenty thousand. Delivery next thirty days; answer promptly.

G. F. GIBNEY & Co.

*Telegram.*

HORSEHEADS, N. Y., Nov. 8th, '80.

G. F. Gibney & Co., Balto.

Gents:—Your dispatch just received. I don't think I have more than about 10,000 bus. 4 rowed barley. Should want 87 net. Think I could furnish as much more two rowed, at 75 cts.

L. L. CURTIS.

---

Curtis *vs.* Gibney.

---

*Telegram.*

BALTIMORE, MD., 11, 9, 1880.

To L. L. Curtis,

Horseheads, N. Y.

Have sold the ten thousand four rowed to net you 87.
See letter about shipping.

G. FRANK GIBNEY & Co.

BALTIMORE, Nov. 9th, 1880.

Ac. sales of four cars barley received from Newfield
Station, N. Y., consigned to J. Boyd, and sold for ac. of
L. L. Curtis, Horseheads, N. Y.    Sold Nov. 4th, 1880.

No.   3765 cont'g $579\frac{39}{100}$

"     107   "    $579\frac{15}{100}$ .

"     10923 "    $577\frac{24}{100}$

"     3640  "    $535\frac{37}{100}$

$\quad\quad\quad\quad\quad$—— $2272\frac{19}{48}$ @ 83 $1,886 09

By draft on J. Boyd.. ..................    250 19

$\quad\quad\quad\quad\quad\quad\quad$——2,136 28

*Charges.*

Freight.................................    170 22
Labor .................................     11 36
Commission 2½ o-o...................     47 15
Nov. 1.. Cash paid J. Boyd am't of
$\quad$ your 4 drafts 450.00 each .....    1,800 00
Int. to date.............................     0 00

$\quad\quad\quad\quad\quad\quad\quad$——2,028 73

Balance to your credit on acc't........    107 55

G. FRANK GIBNEY & Co.

E. & O. E.    B.

L. L. Curtis,    BALTIMORE, Nov. 10th, 1880.
$\quad$ Horseheads, N. Y.

Dear Sir:—Enclosed please find account sales for 4 cars
barley handed over to us by J. Boyd, Esq., showing a bal-

ance to your credit of $107.55 after receiving from Mr. Boyd, $250.19.

Your 4 cars barley we sold last Thursday, Nov. 4th, @ 83c. cash, which we thought best to do, rather than run in warehouse, and yesterday we sold you one car at 88c. best could be done—and last night sold your 10,000 to net you your price, 87c, which we consider a good sale. We sold it by average sample, to be like last shipments. Now, when you ship this barley, would like you to do as all our other customers do, say draw 5 days drafts on us, we accept same and pay them when due, giving barley time to get here and get up acc't when draft becomes due. By so doing you will oblige us. You need not be in any great hurry about shipping, so you get it in this month; still, the sooner the better, as to have deal closed up. Please let us know if you have any more to offer. When we weigh up the one car, will send you check for the whole 5 cars. Awaiting your favors, we remain,

Yours respectfully,

G. Frank Gibney & Co.

*Telegram.*

L. L. Curtis,                    Balto., Nov. 12th, '80.
    Horseheads, N. Y.

Can you ship 5 cars by Saturday night, on ten thousand contract? Answer by wire.

G. F. Gibney & Co.

*Postal.*

Horseheads, N. Y., Saturday Eve.

G. F. Gibney & Co., Baltimore :

Gents:—I have just come home from Newfield, my shipping point, and find your telegram. I should have shipped you several cars barley this week, but have been unable to get a single car for Balto. I ship on a branch of the L. &. R., and they will load only certain cars for Baltimore.

Yours,                    L. L. Curtis.

*Telegram.*

BALTIMORE, Nov. 15th, '80.

L. L. Curtis,
       Horseheads, N. Y.

Postal received; get off your cars quick as possible, as it is wanted at the malt-house badly.

G. F. GIBNEY & Co.

*Letter.*

BALTIMORE, Nov. 15th, '80.

L. L. Curtis,
       Horseheads, N. Y.

Dear Sir:—Your postal to hand and fully noted. In reply, would say our customer wants the barley badly, and was in our place again to-day, and asked us to wire you, so it would be here this week, some of it. Are now waiting your reply.

Yours, &c.,

G. F. GIBNEY & Co.

*Letter.*

BALTIMORE, Nov. 17th, 1880.

L. L. Curtis, Esq.,
       Horseheads, N. Y.

Dear Sir: Herewith we hand you acc't sales of your one car barley showing net proceeds to be $39.99, which we have placed to your acc't. We would like to know when you intend to send on barley bought of you? Our people want the barley this week, and will compel us to fill what we sold them. We would like to know what you intend to do? What price can you deliver 2 r'd here for?

Yours, respectfully,

G. FRANK GIBNEY & Co.

Curtis *vs.* Gibney.

### *Account.*

BALTIMORE, Nov. 18, 1880.

Acc't sales of one car barley, received from Newfield Station, New York, and sold for acc. of L. L. Curtis, Esq.

Nov. 10. No. 2,334, cont'g 564.08 @ 88....     496 47

### *Charges.*

| | | | | |
|---|---|---|---|---:|
| Nov. 10. | Cash paid freight. ........ ..... ..... | 41 | 25 | |
| " | " " labor...................... | 2 | 82 | |
| " | Commission 2½ o-o......... ... ...... | 12 | 41 | |
| " 8. | Cash paid your draft at sight......400 | 00 | | |
| | | | 456 | 48 |

Balance to your credit on acc............    39 99

E. & O. E.

### *Letter.*

HORSEHEADS, N. Y., Nov. 19, 1880.

Gents:—I have shipped you 3 cars barley, as follows:

No. P.   867, 582 bus.

N. C. 7,968, 608  "

      701, 580  "

1770 @ 87c . .....................$1,539 90

Less freights................................  125 65

$1,414 24

Sight draft..... .................. .....$1,414 24

These cars were loaded at Newfield and I have no memorandum of the No. of the third car, but think it was 701. It will not be necessary to find any shortage in these cars. The grain is carefully and correctly weighed in. I wish you would close up the acct. at once. I have no patience with such delay.

    Yours,          L. L. CURTIS.

## *Letter.*

BALTIMORE, Nov. 22, 1880.

L. L. Curtis, Esq.,

Horseheads, N. Y.

Dear Sir:—Your favor 19th, to hand and fully noted. We sent you Nov. 9th, acc't sales Boyd's 4 cars, and on Nov. 18th we sent you account sales your one car, showing a net balance of $147,54, which we have placed to the credit of your account. Your s't d'fts, with R. R. receipts attached, came to hand to-day, and we refused to pay same, as you left no margin whatever. We will try and weigh barley and telegraph you to-morrow what you may draw. Please hurry forward the balance of the contract as our parties are pushing us.

Yours, respect.,

G. FRANK GIBNEY & Co.

## *Telegram.*

This telegram has been received at Horseheads, N. Y., dated Balto., Md., 11-24, 1880, to L. L. Curtis:

We have satisfied a call for margin on our contract for ten thousand bushels your barley, and now notify you that we will hold to your credit in account until final settlement what we now have on hand. Ship balance as rapidly as possible, otherwise we will be compelled to buy on the market here, which would probably make you a loss.

G. FRANK GIBNEY & Co.

## *Letter.*

BALTIMORE, Nov. 24th, 1880.

L. L. Curtis, Esq.,

Horseheads, N. York.

Dear Sir:—Your three cars were weighed up to-day, No. 867, $534\frac{21}{48}$, No. 7,968, $593\frac{19}{48}$, No. 701, $567\frac{95}{48}$, total, $1,694\frac{45}{48}$, showing a shortage of about 75 bushels; the parties whom

we sold barley to, called on us for margin, which we had to put up, and we wired you to-day, saying, "we have satisfied a call for margin, on our contract for ten thousand bushels your barley, and now notify you, that we will hold to your credits, in account, until final settlement, what we now have in hand; ship balance as rapidly as possible, otherwise we will be compelled to buy on the market here, which would probably make you a loss," and now await your reply; barley is booming here, for four rowed, and they are pushing us to deliver promptly, and we ask you, as a favor, to hurry the barley forward; your postal to hand, saying you have 4 more cars for early shipment, which, please forward as soon as possible ; so we can settle up all the account; if you have any two rowed, let us know what you want for it.

Yours, respectfully,

G. FRANK GIBNEY & Co.

P. S.—Will weigh up the barley promptly on arrival, and send you check on New York.

Yours, &c.,

G. F. G. & Co.

### Telegram.

HORSEHEADS, New York, Nov. 26th, 1881.
To G. Frank Gibney & Co.,

No. 2 Guilford Street,

Baltimore, Md.

No remittance received ; will not ship until received ; have written.

L. L. CURTIS.

### Letter.

HORSEHEADS, Nov. 27th, 1880.
Mess. G. Frank Gibney & Co.

Gents :—I sent telegram to-day, why I could not send your barley ; it is entirely on account of your failure to

honor the last draft I made on you; I had a large amount of barley engaged, for the payment of which I had to use the draft I sent, and it coming back protested, was entirely unexpected, as well as uncalled for; I can ship you all the barley you want, if you remit the proceeds of the last invoice, immediately. You were strangers to me, and you had no right to expect I would send you a large amount of grain, unless it was paid for as sent; it has not been my practice with you, or anyone else; you must, therefore, send draft for the 3 last cars sent, immediately; I should have shipped you 3 or 4 cars this week, but for your failure to honor the last draft. You will therefore see the necessity of remitting at once, if you wish further shipments. Your action has resulted very injuriously in preventing me from moving grain.

Yours, respectfully,

L. L. CURTIS.

### *Telegram.*

To L. L. Curtis,

Horseheads, N. Y.:

BALT., MD., 11-27, 1880.

To L. L. Curtis:—We have no intention of remitting margin in hand. We will remit for future shipments, promptly reserving only reasonable margin payable to you on final settlement. Your margin is insufficient now, barley advancing three to five cents per day. Having satisfied additional call, positively decline to run any further risk for your account, and if you do not show some disposition to satisfy, we will close for ten cars, at one dollar ten, for account of your contract at three p. m. to-day. Your dispatch received. From its tenor we decline to wait for letter but require an answer by wire.

G. FRANK GIBNEY & Co.

Curtis *vs.* Gibney.

*Telegram.*

HORSEHEADS, N. Y., Nov. 27, 1881.

To G. Frank Gibney & Co.,

No. 2 Guilford Street,

Balto., Md.

I have plenty barley engaged, but must have returns from last shipment to move it.

L. L. CURTIS.

*Letter.*

BALTIMORE, Nov. 27th, 1880.

L. L. Curtis, Esq.,

Horseheads, N. Y.:

Dear Sir:—Herewith we hand you statement of account showing $1,496.46, which amount we.hold to your credit in account as margin on the contract for 10,000 bushels @ 87¼ with us, against which we have received 3 cars which is shown by above mentioned statement.

We do not wish to put you to any loss, but as our customers are pushing us daily, and as barley has advanced 3 to 5 cents per day for the last few days, by delay you are simply laying yourself liable to a loss, for we suppose that you have the barley purchased at such a figure as would leave you some profit even at 87¼. Push forward what barley you have at once, and we will immediately remit the amount less the freight, as every car received by us now will lessen the margin necessarily. If you desire to make any arrangement with your bank there, and they require any reference as to with whom you are dealing we beg to refer you to the Drovers' and Mechanics' Bank, of this city. You certainly must see the necessity of doing something quickly, as the margin we now hold is already exhausted unless you push forward the barley. Let us know by wire on Monday what you intend to do.

Yours respectfully,

G. FRANK GIBNEY & Co.

---

Curtis *vs.* Gibney.

---

*Account.*

BALTO., Nov. 27th, 1880.

L. L. Curtis, Esq., Horseheads, N. Y.,
        In ac. with G. Frank Gibney & Co.:

1880.

Nov. 9. Balance credit to your ac. for
        sales ren'd ...................................$107 55
     18.   "      "      "      "    39 99
                                   $147 54

     24. Car No.    867, cont'g 538 21
     24.   "    "    7968,   "     593 19
     24.   "    "      701,   "     567 05

                     1694 $\frac{45}{48}$ a 87 1,474 59

Less freight.........................................125 67
                                      1,348 92

Amt. to your credit in ac., as margin on contract
     for 10,000 bushels barley...........................$1,496 46

*Telegram.*

ITHICA, N. Y., Nov, 29th, 1880.

To G. Frank Gibney & Co.,
        No. 2 Guilford Street, Baltimore, Md.:

I decline further consignments barley until you pay last
invoice.

                                L. L. CURTIS.

*Telegram.*

BALTIMORE, MD. 11, 29th, 1880.

To L. L. Curtis,
        Horseheads, New York:

Your telegram rec'd. As you decline to fulfil your contract, we will proceed to purchase in the market, to the best advantage, for your account, holding funds now in our hands against same.

                 G. FRANK GIBNEY & Co.

Curtis *vs.* Gibney.

*Telegram.*

TRUMANSBURG, Nov. 30th, 1880.

To G. Frank Gibney & Co.,

No. 2 Guilford St., Balto., Md.

(Duplicate message.)—Your dispatch just received. You will purchase no barley on my account.

L. L. CURTIS.

*Account.*

BALTIMORE, Dec. 14th, 1880.

Mr. L. L. Curtis,

In ac. with G. Frank Gibney & Co.:

1880.

Dec. —. To barley purchased to complete contract made for your ac., Nov. 9th, 1880, for 10,000 bushels, 87 c. net, to you, Baltimore, viz.: 13 cars, cont'g 8305.$\frac{93}{48}$ bus., average price 107$\frac{1}{4}$...... $8,907 17

CR.

1880.

Nov. 27. By bal. to you, as per ac. ren'd......................... $1,496 46

Dec. —. By delivery of above 13 cars, being balance required to complete contract, containing 8305$\frac{93}{48}$ bushels, contract price, 87 c. ..................... .....·. 7,225 36

—————— $8,721 82

Balance due G. Frank Gibney & Co., $185 35

*E. & O. E.—Memorandum of Weight herewith.*

---

Curtis *vs.* Gibney.

---

Car No. · 1623, containing 606.12
  "   "   8154,   "   659.09
  "   "  11826,   "   714.04
  "   "  11960,   "   677.04
  "   "  11229,   "  · 666.30
  "   "   1636,   "   597.32
  "   "   8082,   "   670.12
  "   "  12234,   "   691.24
  "   "  11394,   "   644.36
  "   "   1169,   "   693.40
  "   "   4699,   "   621.33
  "   "   2719,   "   739.07
  "   "   7768,   "   323.00   Part,

Bushels.................. 8305.$\frac{0.3}{4.8}$   "

*Letter.*

BALTO., Dec. 16, 1880.

L. L. Curtis, Esq.,

    Horseheads, N. York.

Dear Sir:—Herewith we hand you statement of your account, showing balance due us, amt. $185.35, which you will please remit us, and oblige—

            Yours, respectfully,

                G. FRANK GIBNEY & Co.

*Letter.*

HORSEHEADS, NEW Y., Dec. 24, '80.

Messrs. G. Frank Gibney & Co.,

    Gents.:—Returning from Newfield yesterday, I find your letter containing what you represent to be a statement of several cars barley, which you claim to have bought on account of an assumed contract between yourselves and myself. Some weeks since, you telegraphed me that you proposed buying certain quantity of barley on my account. I replied, stating, "you will buy no barley on my account."

Now, as to any contract between us under which I was to sell you any certain quantity of barley at a specified price, you well know that no such contract, expressed or implied, ever existed. You still neglect to remit the balance due me on ac. barley sold for me amounting to $1,561.77, with interest from Nov. 24, '80, I now ask you once more to forward the above amount without further delay.

L. L. CURTIS.

L. L. Curtis, the defendant, offered the two following prayers in the first case, (*Gibney vs. Curtis :*)

1. There is no evidence that the plaintiff was authorized or requested by the defendant to sell ten thousand bushels of barley on his account, and therefore the plaintiff is not entitled to recover under any of the first seven counts of the declaration in this case.

2. There is no evidence of the specific terms of the contract alleged by the plaintiff in the seventh count of his declaration as the foundation of said seventh count, and therefore the plaintiff cannot recover under said count.

. And also prayed the Court to grant the following instruction in the second case, (*Curtis vs. Gibney :*)

3. If the jury find that on or about Nov. 17th and 18th, the plaintiff Curtis shipped to the defendant Gibney, at Baltimore, three car loads of barley, and about the same time drew upon him the two drafts offered in evidence for $1414.23 and $147.54, respectively, the railroad receipts for said three cars being attached to the draft for $1414.23, and that said drafts were duly presented for payment and dishonored, and that the several letters, postal cards and telegrams offered in evidence, passed between the said Curtis and Gibney, on or about their respective dates, then the failure and refusal of said Gibney to remit to said Curtis the price of said three car loads of barley received by him, relieved the said Curtis from any obligation to ship to said Gibney, the remainder of the 10,000 bushels of barley so

ordered by him ; and said Curtis is entitled to recover in this action the value of said three car loads of barley so received by Gibney (less the $125.67 paid by him for freight) with interest thereon, in the discretion of the jury, from Nov. 24, 1881, and also the additional sum of $147.54, admitted to be due upon the previous transactions, in said Gibney's letter of November 17, 1880, with interest thereon from November 17th, 1880.

The Court (BROWN, J.,) refused all the prayers so offered and L. L. Curtis excepted, and the verdict and judgment in both cases being rendered against him, he appealed.

The causes were argued before BARTOL, C. J., GRASON, MILLER, ROBINSON, and IRVING, J.

*William Reynolds,* for the appellant.

*Sebastian Brown,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

By agreement of counsel these cases were tried in the Court below before the same jury, and have been argued together in this Court; they involve the same questions and will be disposed of in one opinion.

The appellant Curtis was, in 1880, a dealer in grain living at Horseheads, N. Y., and the appellee was a commission merchant carrying on business in Baltimore, in the name of G. Frank Gibney & Co. The dealings and transactions between the parties are shown by the letters, postal cards and telegrams passing between them, which were produced in evidence. These will be fully stated by the Reporter, and it is not necessary to set them out at length in this opinion.

When the correspondence began, the parties were strangers to each other. The appellant had consigned to

John Boyd, a malster, in Baltimore, four car loads of barley for sale, which Boyd proposed to hand over to the appellee to be disposed of by him.   On the 30th of October 1880, the latter sent to the appellant the letter of that date.   On the same day, the appellant telegraphs to the appellee:

"Please protect drafts, and place barley to best advantage,"—and November 2d again telegraphed:

"Please report as soon as possible, what has been done with the drafts."

And November 4th informed appellee by letter that he had that day shipped to him a car load of barley, directed him to place same to best advantage, report early, will draw $400, (580 bushels in car.)

These several consignments were sold by the appellee, and accounts of sales rendered, viz., on the 10*th of Nov.* account of sales of barley that had been consigned to Boyd showed a balance in hands of appellee of $107.55. And on 18th Nov. account of sales of one car load consigned to appellee, showed balance in his hands arising from that sale, to credit of appellant, of $39.99.

In the mean time, viz., on Nov. 8th, the appellee telegraphed to appellant:

"Say lowest net to you twenty thousand.   Delivering next thirty days, answer promptly."

To which was sent on the same day, the following reply:

"Your dispatch just received.   I don't think I have more than about 10,000 bushels 4 rowed barley.   Should want 87 net.   Think I could furnish as much more two-rowed at 75 cents." ·

L. L. CURTIS.

On the following day, Nov. 9th, the appellee telegraphed to appellant:

"Have sold the ten thousand four-rowed to net you 87.   See letter about shipping."

---

Curtis *vs.* Gibney.

---

The letter referred to is dated 10th Nov., and after reporting sales of the five car loads barley before received, —says, "sold you ten thousand to net you your price 87 cents, which we consider a good sale. We sold it by average sample, to be like last shipments. Now when you ship this barley, would like you to do as all our other customers do, say, draw five day drafts on us, we accept same and pay them when due, giving barley time to get here, and get up account, when draft becomes due. By so doing you will oblige us. You need not be in a great hurry about shipping, so you get it in this month, still, the sooner the better, as to have deal closed up. Please let us know if you have any more to offer. When we weigh up the one car, will send you check for the whole five cars. Awaiting your favors, we remain,"

"F. GIBNEY & Co."

The last part of this letter evidently refers to the *five car loads* previously received by the appellee.

Then followed the telegrams, postal cards and letters dated respectively Nov. 12th, Nov. 15th, Nov. 17th, Nov. 18th.

On November 19th appellant shipped to appellee 3 cars of barley—stating in his letter the quantity, and that it amounted at 87 cents to $1414.24 net, after deducting therefrom $125.66 for freight—for this amount he drew a *sight draft* on appellee, asked him to close up the account at once, saying, "I have no patience with such delay." The draft was protested for non-acceptance. On the same day the appellant drew on appellee at sight for $147.54, being the balance in the hands of appellee due appellant for proceeds of sales of the 5 car loads of barley previously sold, as shown by the accounts of sales rendered by appellee; this draft was also returned protested for non-acceptance. On Nov. 22d the appellee wrote to appellant as follows: "Your favor 19th to hand, and fully

noted. We sent you Nov. 9th account sales Boyd's four cars, and on Nov. 18th we sent you account sales your one car, showing a net balance of $147.54, which we have placed to the credit of your account. Your s't drafts with R. R. receipts attached, came to hand to day, and we refused to pay same, as you left no margin whatever. We will try and weigh barley, and telegraph you to-morrow what you may draw. Please hurry forward the balance of the contract, as our parties are pushing us."

The price of barley rose rapidly in the market. No remittance was thereafter made to the appellant by the appellee, nor was any more barley sent by the former; on account, as he states in his subsequent letters, of the failure of the appellee to honor his drafts, or to remit to him the proceeds of his consignment, which, as he alleges, injured his credit and prevented him from "moving the grain."

It appears from the ·proof, that on the 9th day of November, 1880, the appellee contracted to sell to Solomon Strauss 10,000 bushels of barley *at* 90 *cents per bushel;* this sale was made by the appellee in his own name, and we infer, upon a credit of four months, as Strauss settled for the same by giving his promissory notes dated respectively Nov. 23d, Dec. 3d, Dec. 7th, and Dec. 13th, each payable *four* months after date.

As the price of barley rapidly advanced, Strauss demanded of the appellee "to put up a margin upon the contract," which was done by the latter giving to the former his promissory note for $600, payable on demand. In order to fulfil his contract with Strauss, the appellee bought barley in the market at a price averaging 107¼; and in his account rendered against the appellant charged him with the barley thus purchased, at the prices paid therefor, and after crediting the sum of $1496.46 being amount due for barley that had been received from the appellant, showed a balance due from the latter of $185.35,

and to recover this balance, the suit of the appellee was instituted.

The second suit was brought by the appellant, claiming to recover the sum of $1496.46, the net proceeds of the barley received from him by the appellee.

At the trial below the appellee recovered a judgment in the case wherein he was plaintiff, which by agreement, necessarily resulted in a judgment against the appellant, in the suit instituted by him, and he has appealed in both cases.

The only questions presented on the appeals, arise upon the prayers of the appellant, which were rejected; no prayers were offered by the appellee.

A very interesting question, which has been argued at the bar, is, what was the relation between the parties in respect to the 10,000 bushels of barley referred to in the telegrams of Nov. 8th? The appellee contends that they stood towards each other in the relation of principal and agent, and that the sale to Strauss was made by the appellee in the capacity of agent or factor, for and on account of the appellant; while the contention on the part of the latter is that the real relation between them in respect to that transaction was that of vendor and purchaser.

The solution of this question depends upon the true construction and effect of the written correspondence, which it is for the Court to interpret. This correspondence shows that the first transactions were simply between the appellant as principal, and the appellee as agent or factor. Five car loads of barley were sold by the appellee in that capacity; four of them had been originally consigned to Boyd, and the fifth was consigned directly to the appellee, these were sold by the latter, for the best price he could obtain, and after deducting the amounts paid for freight and other charges, and a commission for his services, the balance remained in his hands payable to the appellant. While these transactions were in progress the telegram of Nov. 8th, was

Curtis *vs.* Gibney.

sent by the appellee to the appellant. As the former had been known to the latter only as a *"Commission Merchant"* or factor—who sold merchandise consigned to him, for, and on account of the consignor; the telegram referred to, must have been understood by the appellant, not as a proposal to purchase 20,000 bushels of barley, but as an inquiry whether the latter had that quantity for sale, and the *net* price, he would expect to receive for it; and the reply thereto sent by the appellant, which has been before stated, by no means authorized the appellee to sell 10,000 bushels of barley for and on account of the appellant. But on the following day, Nov 9th, the appellee telegraphed to appellant, "Have sold the ten thousand four-rowed to net you 87;" and referred to letter about shipping. This letter was dated 10th Nov. Its contents have been before stated. Now after the receipt of this letter and telegram, the appellant, on the 19th of November, sent three car loads of barley. This consignment can only be understood as a recognition or ratification by the appellant of the sale reported by the telegram and letter of Nov. 9th and 10th.

When this last consignment was made, the appellant drew on the appellee *at sight for* $1414.24, which, according to the railroad receipts, appeared to be the net amount of the barley at 87 cents, after deducting freight. But according to the terms of the letter about shipping, which he must be held to have assented to, he had no right to draw at sight, and he could not therefore properly complain that his draft was not paid. The more especially, as it turned out when the barley was weighed, that there was a deficiency in the quantity of 75 bushels. His other draft drawn at the same time, for $147.54, the cash balance in the hands of the appellee, due him on account of previous consignments, ought to have been accepted and paid by the appellee, and the latter had no legal excuse or justification for failing to pay the same. Thus far the correspondence between the parties would seem to indicate that

the appellant dealt with the appellee simply as a factor or agent, or as the latter styled himself, as "a Commission Merchant."

Whether the sale to Strauss can properly be considered as having been made by the appellee as factor or agent only, for and on account of the appellant (and that the appellee so considered it we have no doubt) or whether the legal effect of the transaction was to make him a purchaser of the barley, and the sale to Strauss, a sale for himself and on his own account, is a question not of easy solution. The case of *Ex parte White in re Nevill,* 6 *Chy. Appeals,* 397, to which we have been referred by appellant's counsel, and which was very well considered and ably decided, would seem to support the position of the appellant. Unquestionably the contract between the parties, as evidenced by the correspondence, was that the appellee bound himself to pay to the appellant 87 *cents a bushel net* for the barley, and to accept and pay the drafts of the latter at five days for the same, without regard to the sale of the article made by him, or the price or terms of payments by his purchaser. And it further appears that the sale to Strauss was for a different price, and payable at a different time, from that stipulated in his own contract with the appellant.

It was said by MELLISH, L. J., in the case before cited: "If the consignee be at liberty, according to the contract between him and his consignor, to sell at any price he likes, and receive payment at any time he likes, but is to be bound if he sells the goods, to pay the consignor for them at a fixed price, and a fixed time—in my opinion, whatever the parties may think, their relation is not that of principal and agent. The contract of sale which the alleged agent makes with his purchaser is not a contract made on account of his principal; for he is to pay a price which may be different, and at a time which may be different from those fixed by the contract. He is not guaranteeing the performance, by the persons to whom he

Curtis *vs.* Gibney.

sells, of their contract with him, which is the proper business of a *del credere* agent; but he is to undertake to pay a certain fixed price for the goods, at a certain fixed time, to his principal, 'wholly independent of what the contract may be with the persons to whom he sells; and my opinion is that, in point of law, the alleged agent in such case, is making on his own account, a contract of purchase with his alleged principal, and is again re-selling."

We consider these to be sound views, and if applied to the cases before us, they would be conclusive against the rights now claimed by the appellee; but it is not necessary for us to rest our decision on that ground. Assuming that the contract with Strauss was made by the appellee as agent or factor, and that the appellant dealt with him in that capacity only; it is very clear that he had no legal right to retain the money of the appellant, as a *"margin"* or security for the performance of the contract on the part of the appellant. *Oelricks vs. Lurman,* 23 *Howard,* 49; *Oelricks and Lurman vs. Ford,* 21 *Md.,* 489. Such a stipulation is not found in the contract, and there is no evidence of any custom binding upon the appellant to justify it. It is equally clear that upon his failure to remit to the appellant the proceeds in his hands, arising from the sale of the barley, according to the terms of his contract with the appellant, the latter was not bound to make further consignments to him. *Benjamin on Sales, secs.* 677, 678, 765; *Wether vs. Reynolds,* 2 *B. & Ad.,* 882; *Bartholomew vs. Markwick,* 15 *C. B. N. S.,* 711, (109 *Eng. C. L. R.,* 711;) *Canal Co. vs. Gordon,* 6 *Wall.,* 561.

And consequently the appellant cannot be held liable for the loss incurred by the appellee, growing out of the sale to Strauss, and the judgment rendered in his favor in the case in which he was plaintiff below, is erroneous and ought to be reversed; there being no sufficient evidence to entitle him to recover upon the seventh count of the

---

Curtis *vs.* Gibney.

---

declaration, as alleged in the appellant's second prayer. By the agreement of counsel, the reversal of that judgment, entitles the appellant to a reversal of the judgment in the case in which he was plaintiff below. We think the general proposition contained in the appellant's *third* prayer is right. It is, however, open to the verbal criticism made by the appellee. Instead of saying the plaintiff was entitled to recover *"the value of the barley,"* &c., it would have been more correct to say the *price thereof* as agreed on by the parties. And so with regard to the claim of interest as *a matter of right,* upon the sum or balance of $147.54, from Nov. 17 1880. In the absence of proof of a contract by appellee to pay interest thereon, or proof of a custom entitling the appellant thereto—interest could only be allowed in the discretion of the jury. 7 *H & J.,* 417; 37 *Md.,* 443.

*Judgments reversed, and*
*new trial ordered.*

(Decided 14th July, 1882.)