## PURCHASES AND DELIVERIES BY INSTALLMENTS.

[Circuit Court of Logan County.]

THE CONTRACTORS AND BUILDERS' SUPPLY COMPANY v. THE ALTA PORTLAND CEMENT COMPANY.

Decided, February Term, 1904.

*Bills of Exceptions—Unattached Box of Exhibits—Review on Weight of the Evidence—Measure of Damages and Misdirection to Jury as to—Groundless Counter-claim—Purchases and Deliveries by Installments—Effect on Contract of Sale of Failure by Purchaser to Pay at Stipulated Time.*

1. Where a bill of exceptions and a box of exhibits were filed in the common pleas court on the same day, but were not attached at that time, and there is no fact except the simultaneous filing of the box and the bill to identify the box or its contents with the case on review, the box does not become a part of the bill of exceptions.

2. The subsequent attachment of the box to the bill of exceptions by a string after the case had reached the circuit court, is either an amendment of the bill by an act of the party, or the attachment has no significance whatever; and in either event the tie that binds should be severed, and the disconnected parts given such recognition as each is entitled to on its own showing.

3. An identification of the box and its contents being impossible, except from sources outside of the record, and it affirmatively appearing from an inspection of the record that there were matters of evidence considered by the jury which are not a part of the bill submitted to the trial judge and signed by him, it follows that the bill of exceptions before the reviewing court can not be considered on the weight of the evidence for the reason that it does not contain all of the evidence, the certificate of the trial judge to the contrary notwithstanding.

4. A misdirection to the jury as to the measure cf damages applicable to a given case is immaterial, unless the jury was also misdirected as to right to recover, where it appears from the record that the jury assessed no damages.

5. However the law may stand in the case of a well grounded counter-claim made by a defendant for damages, it can not be seriously contended that the assertion of a groundless counter-claim, even if asserted in good faith, excuses a defendant from the performance of an obligation either admitted or proved on trial.

6. Under the contract in suit, the purchaser having failed to make installment payments when due, the seller had the right to refuse to make installment deliveries at the time agreed upon.

MOONEY, J.; DAY, J., and NORRIS, J., concur.

In the original action defendant in error as plaintiff sued to recover from plaintiff in error as defendant, a balance of $1,-145.60 upon an account for merchandise sold and delivered. In its amended and supplemental answer and cross-petition said defendant admitted the account and set up a credit on the same of $218.90 arising since the commencement of the action, leaving an admitted balance of $926.70 on the account. To cancel this balance and also to secure a recovery in its own favor defendant by way of cross-petition pleads two causes of action:

First.    That under a contract entered into 1901 for an agreed price to be paid by defendant, plaintiff agreed to sell and deliver certain cement, which upon test made by the Osborn Engineering Company, of Cleveland, Ohio, would prove to be and, in fact, would be of a certain quality; that in pretended performance of said contract plaintiff did deliver certain cement which in fact was not subjected to the required test and which was worthless in quality; that defendant relying upon plaintiff's performance of its contract accepted more than 285 barrels of this worthless cement and used the same in the construction of a railroad platform; that said construction was defective by reason of the worthless quality of said cement and defendant was compelled to reconstruct the platform, in all to its damage in the sum of $1,200, for which judgment was prayed.

Second.    Defendant states that on March 6, 1902, plaintiff and defendant entered into another contract by the terms of which, for an agreed price to be paid by defendant, plaintiff agreed to manufacture and sell to defendant, and deliver on board cars at Rushsylvania, Ohio, during the building season of 1902, 15,000 barrels of the best brand of Alta Portland cement, deliveries to be made in such quantities and at such times during said season as defendant might from time to time require, payment to be made within sixty days from date of each bill of lading; or defendant might pay in ten days and retain a discount of two per cent. Defendant states that during said season plaintiff delivered under said contract 950 barrels of cement and no more, the same being the merchandise an account of which is stated in plaintiff's petition, and plaintiff has and

does now, without any fault of defendant, fail, neglect and refuse to furnish and deliver any more cement under said contract and by reason of such failure, neglect and refusal the defendant, without any fault upon its part, has been unable to supply the demand upon it, and has suffered and sustained a loss of the difference between the market value of cement during the season of 1902 and the price at which plaintiff agreed to furnish the said 15,000 barrels of cement, to-wit, the sum of $1.0742 per barrel, making a total of $15,092.51, for which upon this second cause of action judgment is prayed. Plaintiff by way of answer to the cross-petition pleads a waiver by defendant of the required test as alleged in the first cause of action and denies all other statements of the cross-petition.

The action on these issues was tried to a jury, and a verdict returned for plaintiff in an amount exactly equal to the balance due on plaintiff's account as admitted by defendant, with interest from the date named in the petition to the day of trial. Defendant filed its motion for a new trial, one ground of which is that the verdict is not sustained by sufficient evidence. This motion was overruled and judgment was entered on the verdict. Defendant duly took a bill of exceptions, and now prosecutes error here to reverse the judgment of the common pleas. The errors assigned are, in substance, in the rulings of evidence, in the charge to the jury and in overruling a motion for a new trial.

The bill of exceptions, as it appeared when called to the attention of this court, consisted of a volume of typewritten testimony, statements as to rulings thereon, certain identified letters, documents and depositions, the charge of the court and exceptions thereto. To this volume there was attached a pasteboard box bearing two labels as follows: "Plff's Exhibits 16 and 17" and "Deft's Exhibits A1, A2, A3 and A4." The box itself bears no other marks of identification. Enclosed in the box are six separate specimens of cement composition. These specimens are labeled respectively "Plff.'s Ex. 16," "Plff.'s Ex. 17," "Deft.'s Ex. A1," etc., but none of them bear any other marks of identification. The bill of exceptions proper shows that specimens marked as those were offered in evidence, at the trial, but

the bill does not refer to the specimens as being attached to it, nor does the box nor the specimens refer in any way by any mark to the bill nor to the action either by number or title. The defendant in error moves to strike the box and its contents from the bill for reasons: 1, said box and contents were not filed in the court of common pleas within time; 2, the same were never submitted to the trial judge as part of the bill; 3, the same were never attached to said bill until after February 15, 1904; 4, the said box and contents were never filed in this court.

The motion was submitted here upon the evidence from which it appears that the second, third and fourth grounds of the motion are well taken. Although there may be some doubt, we find that the bill proper and the box are each filed on the same day in the common pleas, but at the time they were not attached to each other, and there is no fact, except that of simultaneous filing with the bill proper, to identify the box or its contents with the case on review, or in fact, with any case whatever.

It is manifest that the attachment of the box to the bill proper, when the case had been carried to this court, is either an amendment of the bill itself by an act of the party in this court, or else such attachment has no significance whatever. If it be an amendment it is important in this case. In either event we think "the tie that binds" the box to the bill proper should be loosed and the disconnected parts receive such recognition here as each upon its own showing is entitled to. Disconnected from the bill proper there is nothing of record or discoverable upon mere inspection to identify the box or its contents with the case on review, and for information on the point we are driven to sources *dehors* the record as defendant in error was upon his motion. On the authority of *The R. R. Co.* v. *Mackey,* 53 O. S., 370, we hold the box and its contents to be no part of the bill of exceptions in this case. It results therefore that there is before this court no bill of exceptions containing *all* the evidence submitted at the trial. The certificate of the trial judge to the contrary is of no avail since, upon an inspection of the bill, it affirmatively appears that there were

matters of evidence considered by the jury which are not a part of the bill which was submitted to the trial judge and which he signed. This proposition was also involved in the Mackey case heretofore cited.

An examination of the bill of exceptions does not disclose any error in the admission or rejection of evidence, and no special complaint or objection in this respect is pointed out to us in argument, in the briefs or by notation on the bill itself.

We think it is evident upon a reading of the bill itself, that if it be held that the evidence in the bill is all the evidence in the case, there is such a material conflict in the evidence relating to both causes of action stated in the cross-petition that no· reviewing court could hold that a finding against the cross-petition is against the manifest weight of the evidence upon either issue. Under these circumstances it is fortunate that the real matters in dispute between the parties are fairly and fully presented by at least one of the exceptions to the charge. We are pleased to be able to conclude that the failure of the bill to present all the evidence does not result in any different ruling here than would be required if we were to hold that the evidence is all in the bill.

Plaintiff in error specially excepted to the instructions given in the charge as to the measure of damages applicable to the second cause of action of the cross-petition. Without quoting the charge, it is sufficient to say that the jury was instructed that if plaintiff in error sustained the claim made in the second cause of action, it would be entitled to a substantial amount in damages, and rules to determine the amount were stated. The jury returned its verdict for defendant in error for the precise amount defendant in error was entitled to recover in the event that plaintiff in error failed to sustain either of its causes of action. It is thus manifest from an examination of the record that the jury found against the plaintiff in error upon both of its causes of action. A misdirection as to the measure of damages on the second cause of action is immaterial unless, as the record stands, the jury was misdirected as to the *right to recover* on that cause of action. Whether there is such misdirection, is the question raised by another exception to the charge.

Plaintiff in error also excepted to the instruction that the dispute between plaintiff and defendant on the question of damages for defective cement for railroad platform under the former contract would be no excuse to plaintiff in error for refusal to pay for deliveries of cement under the contract in suit according to the terms of the latter contract. The correctness of this charge is held, in effect, in *Bradley* v. *King,* 44 Ill., 339, but we do not think it is now important in the case whether this instruction be correct or not. The jury found that plaintiff in error had no valid claim for damages on account of the platform transaction and that, in consequence, the assertion of such claim by defendants was groundless. However, the law may be in the case of a well-grounded counter-claim made by defendant for damages, it is believed that no one will seriously contend that the assertion of a groundless counter-claim will excuse a defendant from the performance of his obligation arising from a contract either admitted or proved upon trial.

"An ill-founded claim for damages in such case does not excuse a defendant from performance, when performance of his admitted obligation becomes due, and if the claim for damages is, in fact, ill-founded, the good faith of the defendant in asserting such claim is, in an action at law, immaterial." *Cresswell Ranch Co.* v. *Martindale,* 11 C. C., 33.

Hence, if this instruction be erroneous, it is not prejudicial to plaintiff in error.

Plaintiff in error also excepted to the instruction, in substance, that if the jury find the contract to be as claimed by defendant in error, and that plaintiff in error did not pay for each shipment of cement at the expiration of the ten days' credit provided by the contract, as defendant in error claims, then on account of such failure by plaintiff in error to pay, defendant in error was released from the obligation to make further shipments of cement under the contract. The jury did find the contract to be as claimed by defendant in error, and so by the correctness of this instruction, the validity of the judgment of the common pleas is to be determined in this proceeding.

The evidence in the record, together with the finding of the jury, makes it clear that defendant in error agreed to manufac-

ture and deliver in installments to plaintiff in error from time to time in 1902 as ordered 15,000 barrels of cement; that plaintiff in error agreed to pay for each shipment within ten days from the date of bill of lading; that under said contract, pursuant to plaintiff in error's order, defendant in error shipped on April 29th, 130 barrels; May 5th, 100 barrels; May 14th, 130 barrels; May 16th, 195 barrels; May 16th, 100 barrels; May 28th, 195 barrels; and May 31st, 250 barrels; that on June 3, 1902, defendant in error complained of non-payment for goods theretofore shipped and, in effect, declined to make further shipments; in reply, plaintiff in error asserted that the credit was sixty days on each shipment, and that by contract it was the sole agent for Hamilton county, for defendant in error's product, and that another Cincinnati firm was being supplied by defendant in error with "Alta" cement, and that defendant in error had, in consequence, broken the contract. No part of the price for the cement shipped as heretofore stated having been paid, the original action was commenced in the common pleas June 19, 1902, to recover the same. No payment for the cement shipped has ever been made. Plaintiff in error offered about June 25, 1902, to pay for future shipments in cash, or in any way that defendant in error might desire, but defendant in error declined to make further shipments and based its refusal upon the failure to pay for the installments then delivered according to contract. The question of law is whether, under these circumstances and for the reason relied upon, defendant in error had the right to refuse further performance. The trial court instructed the jury that defendant in error had such right by reason of the non-payment.

While the contract to purchase is divisible or "distributive" as to performance, it was, nevertheless, a single entire contract in its formation and obligation (*Pope* v. *Porter,* 102 N. Y., 366; *Denny* v. *Williams,* 5 Allen, 1-4), and the promise and performance on one side was the sole consideration for the promise and performance on the other. In the nature of the contract, at least partial performance on the part of the defendant in error was a condition precedent to a corresponding partial performance on the part of the plaintiff in error. An installment de-

livery was to precede by ten days a corresponding payment. The initial installment was shipped by defendant in error on April 29, 1902. By the finding of the jury, payment of this fell due on May 9, 1902. Subsequent payments fell due before June 3, 1902, on May 15, 24 and 26. Plaintiff in error made default in each case and no payment whatever was made before June 3, 1902, when defendant in error declined to make further shipments on the contract, nor before June 19, 1902, when the original action was commenced, nor before October 28, 1902, when plaintiff in error asserted its second cause of action by way of counter-claim in the original action.

The question arising upon the exception to the charge in the respect under consideration has not been determined by the Supreme Court of our state. In other jurisdictions the cases are in conflict. Courts of the very highest authority have held that the failure of the purchaser to make installment payments, or the seller to make installment deliveries at the very time agreed upon, does not of itself authorize the other party, after performance has commenced, to refuse further performance. After some hesitation and with the decisions of the inferior courts in conflict, the House of Lords has declared this to be the law of *England* (*Mersey Steel Co.* v. *Naylor,* 1884, 9 App. Cas., 434-439); the same rule is recognized and enforced in *New Jersey* (*Blackburn* v. *Reilly,* 54 Am. Rep., 159; *Gerli* v. *Poidebard Silk Mfg. Co.,* 51 Am. St., 611); in *Iowa* (*Myer* v. *Wheeler,* 65 Iowa, 390; *Osgood* v. *Bauder,* 75 Iowa, 550), and in *Michigan* (*West* v. *Bechtel,* 84 N. W., 69, reviewing many cases).

This last case, page 76, states the rule and its consequences as follows:

"The rule is that defaults by one party in making particular payments or deliveries will not release the other party from his duty to make the other deliveries or payments stipulated in the contract, unless the conduct of the party in default be such as to evince an intention to abandon the contract, or a design no longer to be bound by its terms. This rule leaves the party complaining of a breach to recover damages for his injury of the normal principle of compensation, without allowing him the abnormal advantage that might inure to him from an option to rescind the bargain."

On the other hand, many courts of equal authority with those heretofore referred to have announced and enforced the rule "that the failure of either party to perform an essential term of the contract gives to the other the right to rescind," or refuse thereafter further to perform the contract. Such is the holding of the *Supreme Court of the United States, Norrington* v. *Wright,* 115 U. S., 188; *Cleveland Rolling Mills* v. *Rhodes,* 121 U. S., 205; *New York, Pope* v. *Porter,* 102 N. Y., 366; *Winchester* v. *Scott,* 114 N. Y., 640; *Kokomo Strawboard Co.* v. *Inman,* 134 N. Y., 92; *Illinois, Bradley* v. *King,* 44 Ill., 339; *George H. Hess Co.* v. *Dawson,* 149 Ill., 139; *Rhode Island, King Phillips Mills* v. *Slater,* 34 Am. Rep., 603; *Providence Coal Co.* v. *Coxe,* 35 Atl. R., 210; *Pennsylvania, Rug* v. *Moore,* 110 Pa. St., 236, citing and distinguishing *Scott* v. *Kittanning Coal Co.,* 33 Am. Rep., 753, which is often cited as opposed; *Maryland, McGrath* v. *Gegner,* 39 Am. St., 415; *Curtis* v. *Gibney,* 59 Md. 131; *Massachusetts, Stephenson* v. *Cady,* 117 Mass., 6, in which case it was held that when executory contracts are made on different days for the sale of goods, the price of which is to be payable on delivery, and the deliveries under the second contract are by its terms to commence when the full quantity required by the first has been shipped, the purchaser can not, after refusing to pay for goods delivered under the first, unless the seller will give security for the entire fulfillment of the contracts, maintain an action for non-delivery under the second contract. See also, *Stokes* v. *Barrs,* 18 Fla., 656; *Robson* v. *Bohn,* 27 Minn., 333; *Branch* v. *Palmer,* 65 Ga., 210; *Fletcher* v. *Cole,* 23 Vt., 114-119; *Haines* v. *Tucker,* 50 N. H., 307; *Durnel* v. *Howard,* 30 Me., 258. These last cases are cited and relied upon as sustaining the rule last above stated, but the writer has had no opportunity to examine the cases themselves in any official report. *Coffinberry* v. *The Sun Oil Company,* 68 O. S., 488, distinctly recognizes the principles upon which these cases are decided.

It is suggested in the case of *Norrington* v. *Wright,* 115 U. S., 188, that the rule announced in *Mersey Steel Co.* v. *Naylor* "is applicable only to the case of the buyer to pay for and not that of a seller to deliver" installments and the inference to be

drawn from the suggestion is that a different rule applies to a buyer in default than to a seller in the same situation. The suggestion referred to was *obiter* the case of *Norrington* v. *Wright*, and the cases do not lend support to the inference; see Benjamin on Sales, Section 593a; *Kokomo Strawboard Co.* v. *Inman*, 134 N. Y., 92; *George H. Hess* v. *Dawson*, 149 Ill., 138; *Rugg* v. *Moore*, 113 Pa. St., 236; *Stephenson* v. *Cady*, 117 Mass., 6, and *McGrath* v. *Gegner*, 39 Am. St., 415, are all cases in which the buyer made default and it was held that the seller was thereby released from the duty to make further performance, and in none of these cases is it held or suggested that the result of a default of the buyer is other or different from that of a default of a seller.

In view of all the cases, and after a careful and critical review of them, Mecham in his recent and valuable work on Sales, at Section 1148, says:

"Though the cases are not in harmony, this view that the failure of either party to perform an essential term of the contract gives to the other the right to rescind that contract is sustained by the clear weight of American authority."

In the *New Jersey* case heretofore cited, 51 Am. St., 611, Van Syckle, J., dissented and wrote a dissenting opinion, maintaining that for the seller's default in delivering one installment the buyer could refuse further performance. The learned editor of the American State Reports, at page 615, says:

"We entertain no doubt that the dissenting opinion is well supported by authorities, and sustained by reason."

The consequences of the prevailing opinion were thus described by the dissenting judge:

"Under the rule of which the judgment below is based, if there is a contract for twelve successive monthly deliveries, the vendor may refuse to make eleven of the deliveries as the due days arrive, and still hold the vendee to the acceptance of the twelfth delivery. Such a doctrine will be startling to the business community. It needs no discussion to show, that in those pursuits where supplies are essential to the employment of labor, no business enterprise can be conducted with safety or success under such a rule. A contract for goods in installments

is hereby perverted into an agreement to engage in a series of law suits, if the vendor so elects, for such damages as the purchaser may be able to recover, as a substitute for what he expressively bargains for, and during all this period the purchaser can not safely secure his needed supplies elsewhere, because he can not know until the due days arrive whether the vendor will make further default. The injustice of such an exposition of the law is even more conspicuous when we consider that in many cases the purchaser will be compelled to seek redress in the courts of another state or in those of a foreign country.''

If the seller ready to perform is not released at his option from further performance upon failure of the buyer to make his payments as agreed, an equal injustice will be done the former and an unexpected hardship visited upon him without any fault whatever upon his part. This seller was a manufacturer of cement. The seller had stipulated for payments within ten days of each delivery. It was not bound by any contract duty to extend a further time of credit nor assume the risks incident thereto. It had the right to rely upon the prompt payment of the installments to supply the necessary funds to continue its manufacture. Having thus arranged for funds, it was not bound to look elsewhere for its supply. It was not bound to enlarge investment by using its own funds or borrowing funds in order that the buyer might continue to make default or to remain in default. It was not bound to accept a chose in action when cash was promised.

''In mercantile contracts time is generally of essence,'' and this is particularly true in contracts for the manufacture and sale of goods (*Howes* v. *Shand*, 2 App. Cas., 455; *Jones* v. *U. S.*, 96 U. S., 24; *Norrington* v. *Wright* and *Cleveland Rolling Mills Co.* v. *Rhodes, ubi supra; Camden Iron Works* v. *Fox*, 34 Fed. Rep., 200; *Scarlett* v. *Stein*, 40 Md., 512; *Cromwell* v. *Wilkinson*, 18 Ind., 365.

While time of payment is not generally of essence, we have seen that in contracts such as the one under consideration here it is held that time is of essence as to payment as well as to delivery. We conclude in accordance with what we believe to be the clear right, both of American authority and cosmopolitain reason, that in the case on review the seller had the clear

right to refuse further performance under the circumstances stated in the instruction to the jury.

How does plaintiff in error stand as to the very authorities relied upon by it? Defendant in error maintained below, and the jury found, that each installment delivered should be paid for in ten days. The admitted fact is that plaintiff in error denied that this was the contract—it was entitled to a sixty-day credit, and this not only upon deliveries already made but upon those to be made in the future. This contention of plaintiff in error involved by necessary implication the declaration of plaintiff in error's intention "to abandon the contract, or a design no longer to be bound by its terms" as the jury upon sufficient evidence found the contract and its terms to be. The offer of plaintiff in error through its attorney to make any terms as to payment for further deliveries is not material in the case because the offer was made after the defendant in error had exercised its option "to rescind." So even upon the case of *Mersey Steel Co. v. Naylor,* and similar cases, the plaintiff in error must fail.

It may be added that at the very time when plaintiff in error filed its cross-petition in the original action, that party was in default for performance of its contract not in some mere matter of detail, nor as to some "subsidiary provision," but as to every single duty which was enjoined upon it under the contract and the performance of which constituted the consideration—the entire consideration for defendant in error was therefore to enforce a contract which, before action brought, it had broken, and the entire consideration of which it had been, caused to fail.

If, as Judge Day finds from the record, the transaction between the parties hereto amounts merely to the creation of a selling agency, it is very clear that upon failure of the agent or factor to transmit the proceeds of sales to the principal at the times when under the contract of agency the payments became due, the principal was at liberty to terminate the agency forthwith and bring suit for the balance then due. The writer is *not* of opinion that the transaction resulted in the creation of a selling agency but that it was and is a contract to sell.

In any view we find no error in the record to. the substantial prejudice of plaintiff in error, and for that reason the judgment of the court of common pleas is affirmed.

## FEES TO TRUST COMPANIES FOR ACTING AS ADMINISTRATORS.

[Hamilton County Circuit Court.]

THE UNION SAVINGS BANK & TRUST COMPANY ET AL V. ELIZABETH S. SMITH ET AL.

Decided, May 12, 1904.

*Wills—Review of Controversy as to Construction of—Does not Involve Weight of Evidence—Necessary Parties Thereto—Statutory Fees May be Paid to Trust Company Acting as Administrator—Notwithstanding Invalidity of Act Authorizing Appointment—Defense of Will by Administrator—Expenses Involved Thereby.*

1. In a controversy which concerns the residue of an estate, legatees who have been paid are not necessary parties.
2. A motion to strike a bill of exceptions from the files upon the ground that it does not contain all the evidence, should be overruled when the errors complained of do not involve the weight of the evidence.
3. A trust company which was appointed without objection as administrator of an estate, and has performed services in that capacity is entitled to compensation therefor, notwithstanding the invalidity of the act under which the appointment was made, and the measure of such compensation is the amount allowed by statute to legally appointed executors and administrators.
4. Where an executor defends a will, and the suit results in a verdict upholding the will, he should be allowed counsel fees, without regard to the fact that the verdict was the result of a compromise between the parties in interest.
5. An executor is not entitled to commissions on real estate which formed part of the residuary estate, and was conveyed in accordance with an agreement between the parties.

GIFFEN, J.; SWING, J., and JELKE, J., concur.

This action arose in the probate court upon exceptions to the account of The Union Savings Bank & Trust Company as ad-