Cromwell v. Wilkinson.

———————————◆◆◆———————————

CROMWELL v. WILKINSON.

The performance of conditions precedent in contracts may be averred generally, under the code, and need not be specially averred, unless there have been some alterations of the conditions by consent of the parties, when performance should be specially pleaded.

Where a cause, involving questions of damages for the breach of a contract, has been tried by a jury, and a verdict returned by them for an excessive sum, it is error for the Court to require the successful party to enter a remittitur for what it may conceive to be the excess, and then to enter judgment for the residue.

At law, time is of the essence of the contract, and strict performance is generally required.

APPEAL from the *Clay* Common Pleas.

PERKINS, J.—The following contract was made in writing:

"This memorandum of an agreement, made and entered into between *Urias Wilkinson,* of the county of *Clay,* and State of *Indiana,* of the first part, and *John Q. Cromwell,* of said county, of the second part, WITNESSETH: That the said *Urias Wilkinson* binds himself to furnish two hundred head of hogs, well fatted, to average two hundred and fifty pounds gross weight, with the privilege of furnishing six hundred head or less, to be delivered between the 1st and 10th days of *December,* 1857, at the option of either party; for which the said *John Q. Cromwell* binds himself to pay 4 dollars and 50 cents per hundred weight. The said *Cromwell* now here advances 400 dollars on the contract. He is to pay 2 dollars a head on the hogs when reported, and the balance on the delivery of the hogs. URIAS WILKINSON,

"*June* 2, 1857. JOHN Q. CROMWELL."

*Cromwell* sues *Wilkinson* for a breach of this contract. There are three paragraphs in his complaint: one embracing the old common counts, and two that are special. The first special paragraph counts on a verbal agreement; the second counts on the written agreement copied, and prays to recover the 400 dollars advanced with interest. The complaint contains the general averment of performance of all conditions on the part of the plaintiff.

In pleading performance of conditions precedent, parties may make their averments special, but it is not necessary. One of the rules of pleading prescribed by the code is this:

"Sec. 84. In pleading the performance of a condition precedent in a contract, it shall be sufficient to allege, generally, that the party performed all the conditions on his part; if the allegation be denied, the facts showing the performance must be proved on the trial."

The general allegation under this rule, says Mr. *Swann,* takes the place of special allegations of performance required in common law pleadings, and, in legal effect, embraces them all, express and implied, both in parol and sealed obligations, including such conditions as demand, notice, readiness on the part of the plaintiff to perform, &c. Pl. and Pr. p. 206. "And in the absence of a provision of the code relating to bills and notes, the section under consideration would be applicable to a complaint, counterclaim, or set-off upon such paper against an endorser or drawer." *Id.* 209. And where the conditions precedent of a contract have been altered by the consent of the parties, the alteration should be stated, and then performance of the contract as modified be alleged, and in respect to any waiver, negligence of the opposite party, &c., which the party pleading may rely upon to excuse performance by him, they must be specially pleaded, or they can not be proved. *Id.* 208; *Purdue* v. *Noffsinger,* 15 Ind. 386.

As to suits upon commercial paper, we are not aware of any section of the code prescribing the requisite allegations; but forms have been enacted averring specially performance of conditions as to demand, &c. 2 R. S. p. 343. These forms are declared to be sufficient; but it is not declared that others may not also be sufficient.

The plaintiff, in the third paragraph of his complaint, averred that he had fully performed all the conditions on his part, but that the defendant had failed to deliver the hogs, &c. The breach was well enough alleged as that of a single condition; but it is said that where there are more than one, or is but one, where it is implied, and not clearly apparent, the breach or breaches should be more specifically assigned. Swann's Pl. and Pr. p. 516, note.

The defendant answered, admitting the reception of the 400 dollars, and alleging performance on his part of all conditions, &c.; but averring that the plaintiff had failed on his

part to receive and pay for the hogs tendered, &c.; whereby he, the defendant, had sustained great loss, for which he claimed satisfaction by way of counterclaim or recoupment, and judgment in his favor.

No replies appear to have been filed, but the objection is not taken. There was a jury trial, and a verdict in favor of the defendant, against the plaintiff, for 250 dollars. The defendant remitted the amount, and the Court rendered judgment against the plaintiff for costs.

The evidence is in the record. It does not show that *Cromwell* performed any positive act touching the execution of the contract. He seems to have been passive, leaving *Wilkinson* to discharge his undertaking in his own way and time. The first act towards the execution of the contract, in the absence of any notice as to time from *Cromwell*, was to be performed by *Wilkinson*, viz: the tender of 200 hogs, or such larger number, within 600, as he chose to deliver, averaging, in gross weight, 250 pounds or more. Ind. Dig. 288. There is no evidence that any place for delivery had been agreed upon; hence, it was to be determined by the legal effect of the written agreement; but no question is made upon the place of delivery. It does not appear that *Wilkinson* ever proposed or offered to deliver, at any place, over 250 hogs. It is certainly very doubtful whether that number, as tendered, came up to the requirements of the contract, in weight and quality; but the jury must have found that they did; and having done so, passed only upon the question of damages. It does not appear whether the contract embraced hogs actually existing and identified, or referred to such as *Wilkinson* might go into the market, and buy to fill its terms. There is no evidence proving that *Cromwell* was not ready with the money to pay for the hogs, provided he was satisfied they filled the requirements of the contract. It does not clearly appear how the hogs tendered and rejected, were finally disposed of; but the

Cromwell *v.* Wilkinson.

most reasonable inference from the evidence is, that they were appropriated to his own use by *Wilkinson.* When refused by *Cromwell,* they were turned by *Wilkinson* into his own lot; some two weeks afterwards, a part of them, at least, seem to have been shipped to *Gosport;* and one witness speaks of having slaughtered some of the small ones.

Had the case been such that damages could have been recovered in it by the defendant, those given by the jury were at least double the amount to which he was entitled, taking the difference between the contract and current prices, as the rule of assessment; and there was nothing justifying punitive damages; nor in the judgment of the writer of this opinion, can such damages ever be given in a civil case, but only compensatory. Whatever damages are given in any case beyond compensation to the wronged party, are given by way of punishment upon the wrong doer; but why should any one individual be armed with the power of the State to punish any offender, and put the inflicted penalty into his own pocket? It is for the State to declare what acts deserve punishment, and to inflict that punishment. If any given act or class of acts demands punishment, let the State put it into the criminal code, and fix the punishment, and not suffer it to be inflicted, at the instigation of the individual, and for his own emolument, at the uncontrolled discretion of a jury. Thus, it seems to the writer, the law should be; thus it is not.

Nor do we think the remittitur, which the Court required, as the condition upon which it would render the judgment it did, helped the matter. In a case where the damages depend upon calculation, as upon a promissory note, the Court might take a remittur of excess, and it would cure error; but where damages depend upon judgment on conflicting evidence, or notions of compensation for tort—questions for the jury—we do not think the *nisi prius* Court, when differing with the jury, has a right to fix the amount itself, and then

render judgment for it. In this case, the verdict was, in fact, for 650 dollars, as it covered the 400 dollars that had been paid. We do not mean to say that a party may not in any case make a voluntary remission of any or all the amount he may have recovered.

But there is another view upon which the Court may have acted, and probably did, in requiring the remittitur. This suit went upon the ground of a recission of the contract, and claimed to recover back money advanced upon it; and the Court may have thought, that though a case for damages was not made in favor of the defendant, yet, that the plaintiff was in default, and, hence, could not recover back advancements, as upon a rescission. But the right to so recover depended upon the question whether there had, in fact, been a rescission of the contract; and this must be inquired into.

As a general proposition, contracts must be rescinded by consent. Where one party is in default, and the other not, the party not in default may, in most cases, though not in all, treat the contract as rescinded, and act accordingly; but this is a mode of rescission by consent. So contracts may be rescinded by express agreement of the parties. *Caldwell* v. *Ward*, 15 Ind. 214. But such agreement may be implied, inferred from circumstances. *Barber* v. *Lyon*, 8 Blackf. 215; *Patterson* v. *Coats, id.* 500; *Blake* v. *Hedges*, 14 Ind. 566; 2 Par. on Cont. 190, 191; *Cantrell et al.* v. *Chism*, 5 Sneed's (Tenn.) Rep. p. 116.

In the case at bar, when *Wilkinson* tendered the 250 hogs to *Cromwell*, the tender having been at the proper time and place, and of articles of the requisite quality, as we will assume for the present, and *Cromwell* refused to receive pay for them, two courses were open to *Wilkinson*. He could have said to *Cromwell*, these hogs fulfill my contract with you, and I shall stand on that contract. I hereby abandon the hogs pursuant to the tender of them to you, and shall sue you for

the price of them. They are your hogs, and at your risk. Perhaps he might have said, I stand upon my tender, the hogs are yours, but if you will not receive the possession of them, and pay me for them, instead of turning them at large, I shall retain them as your property, and shall re-sell them, at a proper time, to make my money, holding you for any deficit. Perhaps the seller in such case has a lien on the property for his pay. *Bradley* v. *Michael*, 1 Ind. 551; *Barbee* v. *Law*, 15 Ind. 109. Such a course would have been in execution of the contract; would have vested the title of the hogs in *Cromwell* and laid him liable for the price of them. *Mitchell* v. *Merrill*, 2 Blackf. 87; *Johnson* v. *Baird*, 3 *id*. 182.

But instead of this course, when *Cromwell* refused to take the hogs, *Wilkinson* might have said, very well, I'll keep the hogs myself; they are worth more than I was to get from you for them. I am satisfied; and have driven off the hogs. From these facts, had they occurred, the jury might have found a rescision. But suppose when *Cromwell* refused to receive the hogs, *Wilkinson* had said nothing, simply driven off the hogs and appropriated them to his own use; might not the jury have inferred a rescission by consent? See *Cantrell et al.* v. *Chism, supra.*

And if there was a rescision, what consequence followed? Why, the parties stood to each other as though no contract had been made; *Gatling* v. *Newell*, 9 Ind. 572; and either might recover, from the other, advancements. *Alcorn* v. *Harmonson*, 2 Blackf. 235.

We think the question of rescission in this case should have been left to the jury.

It should be remembered that, at law, time is of the essence of a contract, and performance is required at the day, or the consequence of default may follow, viz: acceptance of the default by the other party as a cause for rescission on his part, and action accordingly. It is only in cases where equity com-

pels specific performance in behalf of the party in default, and not in all of those, that that jurisdiction disregards this principle.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded.

*Williamson & Daggy*, for the appellant.