[No. 12735.   Department Two.   August 4, 1915.]

THE STATE OF WASHINGTON, *on the Relation of Scott Calhoun et al.*, *Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, *Respondent.*[1]

JUDGES—POWERS—EXERCISE BEYOND TERRITORIAL LIMITS—VISITING JUDGES. Rem. & Bal. Code, § 42, expressly authorizes a judge of one county who sits in a case in any other county out of the district to determine the cause and render judgment in any other county in the state.

JUDGMENTS—TIME FOR RENDITION—DELAY. Delay in moving for judgment after the court has announced its conclusions does not work a loss of jurisdiction, the adverse parties having remained silent.

PROHIBITION—TO COURTS—WHEN LIES—JURISDICTION. Since prohibition does not lie to arrest the erroneous exercise of acknowledged jurisdiction, the remedy being by appeal, it will not issue to a judge who has been given jurisdiction to enter a judgment to restrain him from erroneously determining an issue which it was not intended to submit to him.

JUDGES—JURISDICTION—VISITING JUDGES—LOSS OF JURISDICTION. In a receivership proceeding, in which issues had been referred to a visiting judge for trial, subsequent proceedings and orders in the receivership by the regular judge, such as acting on claims, does not deprive the visiting judge of the power to act upon the matters submitted to him.

Application filed in the supreme court April 2, 1915, for a writ of prohibition to the superior court for King county, Kauffman, J., to prohibit further proceedings in a cause. Writ denied.

*Scott Calhoun*, for relators.

*Higgins & Hughes*, for respondent.

FULLERTON, J.—On May 1, 1908, the Seattle, Renton & Southern Railway Company owned and operated a street and suburban railway between a certain point in the city of Seattle and the city of Renton, all in King county. On the

[1]Reported in 150 Pac. 1168.

day named, it made a trust deed of all of its property to Augustus S. Peabody and the First Trust and Savings Bank of Chicago, to secure the payment of one million dollars in bonds which it proposed to issue and which the brokerage firm of Peabody, Houghteling & Company agreed, upon certain conditions, to float. The bonds were subsequently issued in part, and were floated pursuant to the agreement, and became outstanding obligations of the company to the amount of some $850,000. The railway company continued thereafter as a going concern, under the management of trustees elected by its stockholders, until May 1, 1911, when, again finding itself unable to meet its obligations, it entered into another agreement with the firm of Peabody, Houghteling & Company. Under the terms of this latter agreement, the stockholders of the railway company conveyed to the trustees named in the original agreement all of the capital stock of the railway company except five shares, as security for the issuance by the railway company of some $300,000 "collateral trust notes," which the firm of Peabody, Houghteling & Company agreed to purchase. The agreement further provided for the resignation of three of the then five trustees, and for the filling of their places by persons selected by Peabody, Houghteling & Company, giving to that company the management and control of the railway company's business. Prior to this sale in pledge, one William R. Crawford was the principal stockholder of the railway company's stock, owning some 250,000 of the 300,000 into which the capital stock was divided.

On April 30, 1912, Crawford brought an action against the trustees named in the trust deed and collateral trust agreement, making the railway corporation and the firm of Peabody, Houghteling & Company parties thereto, alleging mismanagement of the railway company's business on the part of the trustees selected by Peabody, Houghteling & Company, and that the railway company was in imminent danger of insolvency because of a conspiracy existing between

the trustees named in the trust agreements and the firm of Peabody, Houghteling & Company to precipitate that event; one ground of the contention being that the trustees were about to suffer certain maturing obligations of the railway company to default, although sufficient funds were in the treasury of the company to meet them. He asked for the appointment of a receiver *pendente lite,* that the purposes of defendants might not be accomplished. The defendants in the action appeared, made answer to the allegation of the complaint, and successfully resisted the appointment of the temporary receiver. Subsequently the railway company made default in its maturing obligations, whereupon the trustees in the trust agreements began an action in the Federal court against the railway company, alleging its insolvency, its default in the payment of its matured obligations, and asking for the appointment of receivers. The railway company appeared in the action and admitted its insolvency, and receivers were appointed, who took possession of the railway property and proceeded with its operation.

After the confession of insolvency made by the railway company in the suit in the Federal court, Crawford filed a supplemental complaint in the state court, alleging the insolvency of the corporation, and procured from that court the appointment of permanent receivers for the railway company. A showing was made in the Federal court of this appointment, whereupon that court set aside its original order for want of jurisdiction, and directed its receivers to turn the railway property over to the receivers appointed by the state court. While in possession of the railway property, the receivers appointed by the Federal court received large sums of money as the earnings of the road and expended large sums in its operation. The receivers, pursuant to the order of the Federal court to turn over to the receivers of the state court the property of the railway company, tendered to such receivers the difference between these two sums. The receivers of the state court conceived that the Federal re-

ceivers should not be allowed the deductions made by them, and applied to the state court for an order requiring them to pay over the full sum collected by them while in possession of the railway property without regard to expenditures. Issue was taken on the allegations of fact contained in the application and affirmative matter alleged, to which the state receivers made reply. In the meantime, the issues in the main action were completed, and the cause stood ready for trial on such issues, and also on the collateral issues raised between the receivers.

The cause was then pending in the department of the superior court of King county presided over by Judge Frater. In January, 1913, Judge Kauffman of Kittitas county was a visiting judge in King county, called in to aid in the disposition of causes then pending. This cause was among the causes assigned to Judge Kauffman for trial. Judge Kauffman assumed that the entire issue was submitted to him for determination, and on January 15, 1913, consolidated the receiver proceedings with the main action and, without objection on the part of any one, entered upon the trial of the consolidated cause, concluding the trial on March 15, 1913. On April 1, 1913, he filed a written opinion on the issues presented in both the main case and the receiver proceedings, in which he announced the conclusions reached by him therein. Subsequently, and on May 17, 1913, he signed findings of fact and conclusions of law, proposed by counsel for the defendants on the issues presented in the main case, which were filed with the other proceedings in the cause in King county. The matter was then suffered to rest, in so far as proceedings before Judge Kauffman were concerned, until March 13, 1915. In the meantime, however, Judge Frater made repeated orders in the cause relative to the conduct of the receivers, and heard and settled a large number of claims of creditors against the railway company presented to the receivers.

On the date last mentioned, the counsel for the defendants in the main issue, and counsel for the Federal receivers in the

receivership proceedings, served notice on the appellant and the state receivers that they would, on April 3, 1915, apply to Judge Kauffman, at Ellensburg, Washington, for a judgment in the main action, in accordance with his findings and conclusions made shortly after the trial of the action, and for findings, conclusions and judgment in the receivers' ancillary action tried therewith, in accordance with the opinion of the court filed as before stated, copies of the proposed judgments and findings being attached to the notice. When this notice was served upon the state receivers, they applied to this court for the issuance of an alternative writ of prohibition against Judge Kauffman, prohibiting him from taking further proceedings in the cause until the further order of this court. The writ was issued, and Judge Kauffman directed to appear and show cause on a day certain why he should not be permanently restrained from proceeding further in the cause.

The first contention made on the part of the receivers is that Judge Kauffman is now without jurisdiction to enter a judgment in the cause. This contention seems to be based on two grounds, the first of which is that his power to do so does not follow him into Kittitas county, the county in which the notice recites the application is to be made; and the second is that he has lost jurisdiction by lapse of time. But we think neither of those contentions well founded. The first is concluded against the appellant by the statute. By § 42 of Rem. & Bal. Code, it is provided that:

"Any judge of the superior court of the state of Washington who shall have heard any cause, either upon motion, demurrer, issue of fact, or other matter in any county out of his district, may decide, rule upon, and determine the same in any county in this state, which decision, ruling and determination shall be in writing and shall be filed immediately with the clerk of the county where such cause is pending."

This section of the statute clearly authorizes a judge of one county or district within the state, who sits in the trial

of a cause in another county or district, to determine and enter a judgment in such cause while in any county of the state. Judge Kauffman, in this instance, is but asked to determine the cause while in his own county, and will be acting within his rightful powers if he does so.

As to the second objection, the delay on the part of the defendants in moving for judgment after the court had announced its conclusion did not work a loss of jurisdiction. The plaintiff or the receivers could doubtless have appeared in the cause at any time after the court announced its conclusion and caused findings of fact and conclusions of law to be made and a judgment entered in accordance therewith, or could have required the prevailing party to submit for the court's approval findings and conclusions, and, perhaps, may have had a dismissal if such party failed to comply with the order, but they cannot themselves remain silent, and then claim loss of jurisdiction when the other party moves. *Peirce v. National Bank of Germantown,* 44 Wash. 404, 87 Pac. 488.

The record shows a misunderstanding between Judge Frater and Judge Kauffman as to the issues submitted to Judge Kauffman for trial. Much is in the record concerning this difference, and the receivers ask us to determine the controversy in this proceeding, and if we find that Judge Kauffman has jurisdiction to proceed at all, to require him to enter a judgment upon the issues we find were actually submitted to him. But we are clear that this controversy has no place in this proceeding. Since we conclude that the court as represented by Judge Kauffman has jurisdiction to enter a judgment in the cause, it follows that he may enter such a judgment as he deems the facts and the law warrants. Prohibition arrests the proceedings of a court when such proceedings are without or in excess of the court's jurisdiction; Rem. & Bal. Code, § 1027 (P. C. 81 § 1781) ; it does not arrest the erroneous exercise of acknowledged jurisdiction.

"The writ of prohibition will not be issued as of course, nor because it may be the most convenient remedy. Nor will it be allowed to take the place of an appeal, or perform the offices of a writ of review. It is a preventive remedy, and as such is bounded by rigid rules, and is only issued in cases of extreme necessity. The remedy is employed only to restrain courts and inferior tribunals exercising judicial functions from acting without or in excess of their jurisdiction; and, if the court or tribunal sought to be restrained has jurisdiction of the subject-matter in controversy, a mistaken exercise of its acknowledged powers will not justify the issuance of the writ. Stated in another way, 'it matters not whether the court below has decided correctly or erroneously; its jurisdiction being conceded, prohibition will not go to prevent an erroneous exercise of that jurisdiction.' " *State ex rel. Lewis v. Hogg*, 22 Wash. 646, 62 Pac. 143.

So, in the case at bar, if the receivers conceive that the findings and judgment proposed by the defendants are not warranted by the facts in evidence, their remedy is to contest the question before Judge Kauffman, and, if unsuccessful, follow the usual corrective remedies for relief against erroneous judgments.

It was said at the argument that the status of the matter in litigation had materially changed since the conclusion of the hearing before Judge Kauffman, and for this reason a judgment appropriate at that time would be inappropriate at this time, and the entry of such a judgment as the defendants propose might prove embarrassing, owing to the orders subsequently made in the receivership proceedings by the judge sitting in King county. But if this be so, the proper place to make the showing is before Judge Kauffman.

The subsequent orders made by the court in King county did not deprive Judge Kauffman of the power to pass on the matters submitted to him, and if they have so far changed the conditions as to render inappropriate now a judgment that would have been appropriate when the hearing before Judge Kauffman was concluded, unquestionably he will make the necessary changes, if reason therefor be shown him.

At the least, he is entitled to the opportunity, and this court should not interfere until he has been given that opportunity.

The temporary writ is quashed and the permanent writ denied.

MORRIS, C. J., ELLIS, PARKER, and MAIN, JJ., concur.