## BARQUIN v. HALL OIL CO.

(No. 994; Decided October 25, 1921; 201 Pac. 352)
(Rehearing denied January 10, 1922; 202 Pac. 1107)

SLANDER OR DEFAMATION OF TITLE—REFUSAL TO CANCEL FORFEITED
LEASE—PUBLICATION ESSENTIAL TO CONSTITUTE SLANDER OF TITLE
—ATTORNEYS FEES—PLEADINGS—SPECIAL DAMAGES—MINES AND
MINERALS—OIL AND GAS LEASE—ELECTION OF REMEDIES—EVIDENCE
—JUDICIAL NOTICE—RESCISSION OF LEASE—CONTRACTS.

1. Failure of lessees to cancel of record oil and gas leases following forfeiture will not entitle lessors to recover special damages for such failure in an action for slander or defamation of title, the leases having been rightfully recorded in the first instance and there being no subsequent publication.

2. In order to constitute defamation of title it is essential that the slander or defamation be published.

3. In an action by lessors against lessees for defamation of title following refusal to cancel recorded leases following forfeiture, attorney's fees are not recoverable.

4. A petition in an action for defamation of title against lessees' for refusal to cancel leases of record following forfeiture, failing to specify special damages sustained, is insufficient, special damages being the gist of such action.

5. Where oil and gas lease required lessees to drill within specified time, but contained no forfeiture clause, lessors having rescinded the lease on lessees default could not recover damages sustained by reason of such default, the two remedies being inconsistent.

6. The doctrine of election of remedies is not confined to cases of fraud but applies whenever a party takes an inconsistent position, whether arising from claims that carry a different measure of damages or otherwise.

7. In action by lessors, following rescission of oil and gas lease for lessees' failure to drill well to depth of 3,000 feet as required by the lease, to recover damages sustained by reason of the development, by such lessees, of wells on adjoining lands, thereby draining oil from under lessors' lands, facts held insufficient to entitle lessors to relief in that it did not appear that the drilling of a well to the depth of 3,000 feet on their land would have produced oil, or that a reasonable time had elapsed in which lessees could have completed the drilling of a well on lessors' land.

8. Where oil and gas lease does not specify the time within which a well shall be completed, a reasonable time for completion thereof will be implied.

9. The court will not take judicial notice of what constitutes a reasonable time for the completion of an oil well in view of the varying fortunes in oil fields, the differences existing in the strata of the earth in different localities, and the accidents and contingencies arising.

10. Where lessors rescinded lease without reservation of any rights following lessees' default, there was a mutual rescission precluding lessors from recovering damages sustained by reason of default.

11. If one party rescinds a contract and the other consents thereto or does not object, the rescission is by mutual consent, and the claims of the parties against each other arising out of the contract, unless reserved, are generally barred.

### ON PETITION FOR REHEARING

12. A claim by a lessor in an action against his lessee for damages in addition to the remedy in equity granted by law for lessees' failure to perform will be disallowed. The granting of such a claim would be judicial legislation.

13. To recover in an action for slander or defamation of title by recording a void deed, malice in the publication is essential.

ERROR to the District Court of Fremont County; HON. CHAS. E. WINTER, Judge.

Action by James Barquin and another against the Hall Oil Company for the cancellation of two oil and gas leases and for damages for failure to cancel said leases of record following forfeiture of rights thereunder by failure to drill.

Opinion denying rehearing follows the original opinion.

*John J. Spriggs,* for plaintiffs in error.

The court erred in sustaining the demurrer to the original petition and in sustaining the motion to strike from the amended petition all allegations of damages; the court erred in sustaining the demurer to the third and fourth causes of action and in entering judgment of dismissal. (Kleiner v. Okelley, 167 Pac. 1.) Plaintiffs were denied

substantial rights by the order of the court below in striking out all allegations of damage, as only redundant, irrelevant and scurrilious matter may be stricken. (See 4407 Comp. Stats. 1910.) This ruling confined plaintiff to his remedy of review on appeal from final judgment. (Hutchinson Co. v. Fahey, 168 Pac. 1139; Methew v. Barton, 128 Pac. 627; Doolittle v. McConnell, 174 Pac. 307; Virtue v. Stanley, 139 Pac. 764.) The sufficiency of the pleading could not be tested by motion to strike. The action resembled one for injunction and damages, both being properly included in one count. (Rogers v. Milliken Oil Co., 161 Pac. 800; Keppner v. Lemon, 35 Atl. 109.) The allegations were proper as a basis for damages. (Howerton v. Kansas Gas Co., 34 L. R. A. N. S. 40.) Motion to strike included all allegations properly pleaded. (Turk v. Page, 174 Pac. 1081.) The law permits no wrong without a remedy. (Pom. Eq. Jr. 427. Cyc. Law Dic. 930.) Action for damages lies for a pecuniary loss. (City v. High, 175 Pac. 229. Am. Jur. 143.) Refusal to cancel a forfeited lease justifies action for damages. (Rogers v. Milliken Co., supra. Keppner v. Lemon, supra. Archer O. & G. 344; Bettman v. Shadle, 22 Ind. App. 542; Ward v. Triple Co., 115 S. W. 819.) Rules of construction peculiar to oil and gas leases differ from general rules. (Archer O. & G. 148.)

Covenants for development and protection are implied in instruments of this class. (Parrafine Co. v. Cruse, 162 Pac. 716; New State Co. v. Dunn, 182 Pac. 514; Core v. New York Co., 52 W. Va. 276; Brewster v. Lanyon Co., 140 Fed. 801; Harris v. Oil Co. 57 Ohio St. 118; 48 N. E. 502; Phillips v. Hamilton, 95 Pac. 846.) Failure to perform covenants in an oil and gas lease from fraudulent motives justifies punitive damages. (Colgan v. Forest Co. 194 Pa. 234; 45 Atl. 119; Young v. Oil Co. 194 Pa. 234; Howerton v. Gas Co. 34 L. R. A. (NS) 40; Brewster v. Lanyon Co. 140 Fed. 801; Blackwell Co. v. Whitesides, 174 Pac. 573.) Failure to cancel forfeited lease is actionable where damage is shown. (Flood v. Von Marcard, 172 Pac. 885.) The petition alleges that the uncancelled leases pre-

vented a sale; this was a slander of title. (525 Cyc.) It is alleged that failure to cancel the forfeited leases was malicious and entitled plaintiff to damage, actual and exemplary.

*Hagens* and *Murane,* for defendant in error.

There is no statute in Wyoming making it the duty of a lessee to discharge or cancel a recorded lease; the Oklahoma case of Rogers v. Milliken does not sustain plaintiff in error and an abandoned oil and gas lease may be cancelled in equity. (Thorton's Law 3rd Edition, 1155.) A declaration of forfeiture is inconsistent with an action for damages. (27 Cyc. 1423.) Ward v. Triple Co. was an action to recover rentals and not for damages. Keppner v. Lemon differs from the facts involved, but that case was overruled in Colgan v. Oil Co.; Archer L. and P. 444.) (See also Brown v. Producers Co., 64 So. 674; Indiana Oil Co. v. Mc-Crory, 140 Pac. 610; Brewster v. Lanyon Co., 140 Fed. 801; Blackwell Co. v. Whitesides, 174 Pac. 573.) The rulings upon motions are not in the record. This court has repeatedly held that it will not consider motions not brought into the record by bill of exceptions. (David v. Whitehead, 13 Wyo. 189; Syndicate Co. v. Bradley, 6 Wyo. 171; Perkins v. McDowell, 3 Wyo. 328; Keffer v. State, 12 Wyo. 49; Littleton v. Burgess, 16 Wyo. 58.) The ruling of the lower court sustaining the demurrer to third and fourth causes of action and the judgment of said court should be sustained.

BLUME, Justice.

The plaintiffs in error, plaintiffs below, bring this action against the defendant in error, defendant below, to cancel of record two oil and gas leases held by defendants on 80 acres of land in Fremont County, and for damage in the sum of $400,000 for failure to cancel said leases of record and for failure to drill. A demurrer was sustained to the original petition. An amended petition was filed. From this, on motion, were stricken all matters relating to damage. The plaintiffs complain of this action here. How-

ever, they 'filed a second amended petition, asking in the first two causes of action for the cancellation of the lease, and in the third and fourth causes of action for damages. The leases were cancelled by decree in the court below. A demurrer was sustained to the causes asking damages and this action of the lower court is here for review. The material facts, as shown by the petition, are as follows: The first lease, executed by the predecessors in interest of plaintiffs, is dated June 9, 1914, is for the term of 10 years and contains the usual clauses, without however, containing special covenants on the part of the lessee. Nothing was done under the lease, but on July 11th, 1916, it was by plaintiffs, who had bought the land in the meantime, "ratified" in consideration of $500.00 paid to them. In this ratification agreement defendants agree to erect a standard rig on the premises within 90 days in order to drill a well of 3000 feet, unless oil or gas is reached at a shallower depth, and further to drill offset wells. In case that no oil was found in the first well, defendants agree to drill other wells, or deliver the lease up for cancellation; no other forfeiture clause is contained in the lease. Plaintiffs charge in substance that nothing was done thereunder by defendants; that immediately after the expiration of the 90 days they considered the lease as void, and refused to grant an extension or to give another lease; that they thereupon "elected to and did rescind the same," and notified the defendant in writing among other things that "by reason of the defaults in the terms of said lease by said lessee and his assigns, the same has become and is null and void, forfeited, of no force and effect and not binding on the undersigned who have elected to and have declared the same forfeited;" and that thereupon defendants admitted that it had no further rights in said lease or said premises and that it had forfeited the lease, but maliciously refused to cancel it of record. The second lease in question, given originally to G. H. Paul, finally assigned to defendants, was dated Sept. 11, 1915, and plaintiffs charge that it was executed by mistake and in ignorance of the existence of the first lease, that it

was null and void *ab initio;* that defendants, upon demand, failed and refused to cancel this lease of record; that this refusal was ''malicious;'' that in the meantime defendants were drilling and developing wells on adjoining premises, thereby fraudulently draining oil from plaintiff's land without paying royalty therefor; that plaintiffs, not being able to develop the land themselves, and with the lease as a cloud on their title, were compelled to sell the land for $10,000, which is less than its value; that they have a binding contract with Martel and Lee for the sale of the land, and agreed to convey a good and marketable title, but they cannot consummate the sale until the cloud is removed. For how much more the land could have been sold, in the absence of said cloud of title, is not stated. Plaintiffs also claim in general terms that they have been compelled to go to expense and trouble and pay attorneys fees in order to cancel said lease and remove the cloud from the title. $200,000 is claimed for actual and $200,000 for punitive damages.

1.   We are cited to Vaught v. Pettyjohn & Co., 104 Kans. 174, 178 Pac. 623; Kelly v. First State Bank, 145 Minn. 321, 177 N. W. 347; A. L. R. 929 and other cases which hold that where a party maliciously puts of record a void instrument affecting title to property, he is guilty of slander or defamation of title and liable for special damages arising therefrom. Counsel for plaintiffs desire us to extend that rule to a case of a mere failure to release an instrument which was rightfully recorded, but should have been cancelled of record by reason of subsequent events. They call our attention to no authority where that has been done; and despite the fact that questions of like kind must naturally have arisen time and again in some of the older states, we have found no case holding such rule. In order to constitute defamation of title it is essential that it be published. (Arnold v. Producers Oil Co. (Tex. Civ. App.) 196 S. W. 735; Potosi Zinc Co. v. Mahoney, 36 Nev. 390, 135 Pac. 1078; Coffman v. Henderson, 9 Ala. App. 553, 63 So. 808; Schoen v. Casualty Co., 147 Ga. 151, 93 S. E. 82, 25 Cyc.

559.) The leases in this case were in the first instance right-fully recorded; that act constituted the publication; and we fail to see how by the failure thereafter to execute a release an ·additional publication can be said to have been made. The point herein raised was mooted, but not decided in Rogers v. Millikin Oil Co., 62 Okl. 147, 161 Pac. 799. In the case of Mickie v. McGehn, 27 Tex. 135, the only case on record, so far as we have been able to discover, directly deciding part of the points raised by counsel of plaintiffs, a demand was made for the release of a chattel mortgage, and it was alleged that the refusal to release "was malicious and for the purpose of vexing and harassing the plaintiff, who had been thereby compelled to employ attorneys at great expense etc. for which he· claims damages." The court, without saying what it would hold where special damages were shown, held that plaintiff was entitled to a decree of cancellation together with costs, and to nothing more. In Pettingill v. Mather, 16 Abb. Prac. 399 and Krulder v. Hillman, 57 Misc. 209, 107 N. Y. S. 727; it was held that before the plaintiff in a suit to compel the cancellation of a ·lien can recover his costs, it must appear that the person demanding a cancellation piece must offer the instrument to be executed, as well as the expenses of the execution. In the case of Morrill v. Title etc., 94 Wash. 258, 267, 162 Pac. 360, 163 Pac. 733, 734, it was stated that no damages were recoverable at common law for the failure to satisfy a mortgage—and the same rule would obtain in the case of other releases—and that the only right of action was in equity. That this is undoubtedly true is clearly shown by the absence of decisions allowing damages under the common law, and by the course of legislation in the United States. In at least 34 states, statutes have been passed, requiring, under penalty, the release of record of mortgages or other liens after they have been satisfied or otherwise discharged. The case of Rogers v. Milliken Oil Co., supra, discloses that the Oklahoma legislature in 1915 required the cancellation of void oil and gas leases, and the case of Elliot v. Oil Company, 106 Kans. 248, 187 Pac.

692, shows that the legislature of Kansas passed a similar act in 1909. Hence to approve of the rule contended for by counsel for plaintiffs would be nothing less than to engage in judicial legislation, which we must refuse to do. If any remedy is needed, that must in such case be asked at the hands of the legislature.

Aside from this, we might add that the second amended petition in this case fails in other respects to state a cause of action for defamation of title. Attorneys fees are claimed, but these are not recoverable in any event. (Mickie v. McGehn, supra; Cohen v. Minzesheomer, 118 N. Y. S. 385; Hubbard v. Scott, 85 Or. 1, 116 Pac. 33 and cases there cited.) This is in consonance with the general rule that ordinarily attorneys fees are not recoverable. (15 C. J. 114.) The special damages which plaintiffs apparently claim by reason of such defamation is that they were prevented from leasing or selling the land to parties other that Martel and Lee without setting out the names or the price; that they were compelled to enforce their rights at great expense and loss of time; that they could have sold the land to Martel and Lee for a greater sum in the absence of the cloud of title, without naming the sum, and without therefore naming the damages sustained thereby, since the additional amount would, of course, in such case be the damages sustained. Now defamation of title of property was not considered harmful at common law and not actionable unless special damages were shown. And since these special damages are the gist and heart of the action, a peculiar strictness governs in respect to the pleadings and evidence. As was said in Griffin v. Isbell, 17 Ala. 186: ''There is, perhaps, no other civil action which has been treated so strictly by the courts.'' Hence the special damages must be specifically pointed out or the petition is demurrable. It is not sufficient to allege in general terms that the plaintiff has been damaged or that he has been prevented from making a sale; if the property could have been sold for more than its value, or for more than it actually brought, the amount thereof must be stated and the parties must be named. It

is clear, therefore, that on this issue the pleadings of plaintiffs are not sufficient against a demurrer; (Stevenson v. Love, 106 Fed. 466; Arnold v. Oil Co., (Tex. Civ. App.) 196 S. W. 735; Hill v. Ward, 13 Ala. 310; Burkett v. Griffith, 90 Cal. 532, 27 Pac. 527; Wilson v. Dubois, 35 Minn. 471, 29 N. W. 68; Linden v. Graham, 1 Duer (N. Y.) 670; Hubbard v. Scott, supra; Ebersole v. Fields, 181 Ala. 42, 62 So. 73.) In the case of Stevenson v. Love, supra, the court said: ''The action, then, being in the nature of one for slander of title, special damages is its gist and substance, and it must be pleaded with particularity. (Odgers, Lib. & Sland. p. 137.) An allegation of loss in general terms is not sufficient. (13 Enc. Pl. & Prac. p. 97, and cases there cited.) It will be observed that the declaration in this case fails to set out the name of the person to whom or the parties at which the sale of the bond and mortgage could have been made if the alleged false statements had not been made by the agents or attorneys of the defendant, or to state either the name of the subsequent purchaser or the price actually obtained at the sale afterwards made. All of these are necessary averments. 'If the special damage was a loss of customers, or of a sale of property, the persons who ceased to be customers or who refused to purchase must be named, and, if they are not named, no cause of action is stated.' (Linden v. Graham, 1 Duer, 670; Wilson v. Dubois, 35 Minn. 471, 29 N. W. 68. 59 Am. Rep. 335.)''

2. The ratification agreement of the first lease contains, as stated, a covenant to erect, within 90 days, a standard rig in order to drill a well 3,000 feet deep if necessary; also to drill offset wells, without providing when this should be done, presumably, therefore, whenever required. These covenants, it is charged, were not complied with, and counsel for plaintiff, relying upon the maxim *ubi jus ibi remedium,* where there is a right, there is a remedy, claims that damages follow as a matter of course. We have no fault to find with the maxim. *''Remedium''* is, however, in the singular, not in the plural, as counsel seems to read it. And it may be further said in passing, since counsel for plain-

tiffs apparently desire to stretch the maxim to the limit, that "wherever the common law gives a right, or prohibits an injury, it also gives a remedy by action. (3 Bl. Com. 123.) Yet this is to be understood of legal right and injury, and not that legal relief is to be had for every species of loss or injury that individuals sustain by the acts of others." (Haldeman v. Chambers, 19 Tex. 1, 52.) We are cited, further, to the case of Lavery v. Oil Development Co., 62 Okl. 106, 162 Pac. 737, which was an action for damages on a covenant to drill. But in that case the plaintiff was satisfied with one remedy, and he did not seek the additional remedy of having the lease cancelled. A number of other cases are cited wherein the plaintiff was content with the one remedy of rescission or termination of the contract. In this case plaintiffs seek two remedies, one in damages, the other in rescission and cancellation. Plaintiffs upon default of defendant, promptly rescinded the lease, or declared it forfeited and null and void, and proceeded to sell the land, not subject to the lease, but as though it were of no force; and this, too, without a distinctive forfeiture clause contained in the lease. The defendant failed to drill; responsibility of some kind for this to the plaintiffs followed. How was this failure satisfied, paid for? The obvious answer is, that satisfaction was made by the rescission, the forfeiture, the cancellation and termination of the lease. If this cancellation was not a satisfaction, what was it given for? If damages must still be paid, though the lease was rescinded and decreed in the lower court to be cancelled, then the cancellation and rescission were clearly without consideration, and imposes upon the delinquent defendant a double liability. If the land was valuable for oil and gas then, it is clear, the defendant, by this termination, paid a heavy penalty; if on the other hand the land contains no oil or gas, then the plaintiffs sustained no damage. It may be true that the cancellation of the lease does not completely satisfy the just claim of the plaintiffs, but the law does not attempt impossibilities, and aims only at substantial justice. For

how much of the damage is the cancellation to stand? Clearly, there is no way to measure that, and hence when plaintiffs chose to pursue this remedy, it must necessarily stand for satisfaction in its entirety. As was said in International Harvester Co. v. Tjentland, 181 Ia. 940, 165 N. W. 180:

"If the defendant was entitled to any damages, he was entitled to recover all his damages. If he recovered any damages, the amount recovered must be deemed all his damages. If he should receive all his damages, he would be made whole and there would be no occasion for awarding rescission. The defendant has his election of two remedies; either to denounce the contract and rescind it, or to affirm it and claim damages. To take one remedy was to waive the other. Having declared upon a rescission he was entitled to be put in *statu quo* and to recover back whatever of the purchase price he had paid. * * * But the rescission being awarded such remedy must be deemed complete. He cannot have rescission without repudiating the contract, nor damages without affirming it."

The quotation is from a case where rescission was made on the ground of fraudulent representations. But the doctrine of election of remedies is not confined to cases of fraud. (Pickle v. Anderson, 62 Wash. 552, 114 Pac. 177.) It applies whenever a party takes an inconsistent position, whether arising from claims that carry a different measure of damages or otherwise. A claimant cannot "blow both hot and cold." When a party in a case like this, sues upon a covenant, he affirms the contract as valid and that position is inconsistent with rescission, termination and disaffirmance thereof. The principle herein announced has been applied in numerous cases and under various conditions. Thus, in case of ordinary contracts, a party cannot rescind it and also sue for a breach thereof. (13 C. J. 623; Chesley v. Coal Company, 19 N. D. 18; 121 N. W. 73; Seymour v. Warren, 47 Misc. 316, 93 N. Y. S. 651; Genet v. Canal Company, 28 App. Div. 328, 51 N. Y. S. 377; Tyler v. Bldg. Co. (Cal. App.) 190 Pac. 209; Timmerman v. Stan-

ley, 123 Ga. 850, 1 L. R. A. (N. S.) 379; The Hubbardston Lumber Company v. Bates, 31 Mich. 158, 169.) A vendor cannot ordinarily forfeit a contract and also recover for unpaid installments due thereunder. (39 Cyc. 1904; Rose v. Rundell, 86 Wash. 492, 150 Pac. 614; Lemle v. Barry, 181 Cal. 15, 183 Pac. 150, 152; Stinson v. Sneed (Tex. Civ. App.) 163 S. W. 989.) In case of a sale of personal property, the purchaser cannot both rescind the sale and also recover on a warranty—which would be akin to attempting recovery on a covenant. (35 Cyc. 160; Williston on Contracts, § 1464; Hauser v. Haines Mg. Co., 53 Wash. 337, 101 Pac. 894, 27 L. R. A. (N. S.) 925.) A similar rule obtains in cases generally where defendant refuses to perform, preventing thereby performance by plaintiffs. (Graves v. White, 87 N. Y. 463; White & Co. v. Rennick & Co., 187 Mass. 41; 84 N. E. 113; U. S. v. Behan, 110 U. S. 338, 345; Meachem v. Gardner, 28 Pas. Super. Ct. 296; Davis v. Tubbs, 7 S. D. 488, 492; Blair v. Refining Co., 35 Cal. App. 394, 170 Pac. 160.) In the case of Chesley v. Coal Company, supra, where the contract was rescinded by plaintiff on account of breach of contract and fraudulent representation, the court said:

"What was the status of the contract and of the parties thereto after plaintiff had rescinded it? The rescission of it wiped out the contract, so far as basing any affirmative action on it relating to its enforcement, or for damages for its breach. It destroyed all its vitality, and the relation of the parties thereto as an express contract was the same as though it never had been entered into."

In the case of Rose v. Rundell, supra, plaintiff, the vendor, commenced an action to recover an installment due under a contract. Thereafter he declared the contract forfeited for the non-payment of an installment falling due subsequently, and, similar to the proceedings in the case at bar, pursued an action for termination of the contract to final judgment and decree before obtaining judgment in the first action. The court said:

"But clearly, whenever the vendor elects to declare the
contract forfeited by the vendee, and does so, and procures
a final judicial decree fully and finally abrogating the con-
tract, all other undetermined and coexisting rights cease
and are determined. If the contract is abrogated, it is not
'in a sense deadened,' to use appellant's words, but it is
absolutely dead. It is *functus officio.* If it is so as to one
party, it is so as to the other. It cannot thereafter be re-
vived and made a live contract by one party alone. The
vendor alone cannot breathe the breath of life into it. All
unpaid balances, not liquidated in judgment, are waived
from the instant that the contract is declared extinct. The
appellant elected and chose to formally and solemnly dis-
affirm and declare forfeited the unexecuted provisions for
the benefit of the respondent by bringing, prosecuting, and
pursuing to judgment his cause No. 98871, for the judicial
termination thereof. That constituted an abandonment of
the action then pending for the recovery of any unpaid pur-
chase money under the contract. By that election he must
abide."

The same principle has been stated in a number of cases
involving oil leases; (Ray v. Gas Co., 138 Pa. St. 576; 20
Atl. 1065; Agerter v. Vandergrift, 138 Pa. St. 593; 21 Atl.
202; Willis v. Gas Co., 130 Pa. St. 222; The Woodland Oil
Co. v. Crawford, 55 Ohio St. 161; 44 N. E. 1093; Allen v.
Narver, 178 Cal. 202, 172 Pac. 980.) In the last case cited,
the defendant had agreed to drill a well, or to pay $100 per
month. The court, speaking of the right to recover the
amount agreed to be paid and the alternative right of rescis-
sion, says:

"It is quite true that by another provision of the lease it
was provided that a failure on the part of the lessees to
comply with the conditions thereof, or their failure to dili-
gently prosecute the work of drilling and producing oil,
would render the lease null and void and of no effect. This
provision constitutes an option given to the lessor, which,
in lieu of insisting upon the payment of the $100 per month

as provided in that portion of the lease hereinbefore quoted, he might or might not exercise at his election.''

The case of Wolf v. Guffey, 161 Pa. 276, 28 Atl. 1117, is, we think, decisive of the case at bar. In that case the defendant had agreed to drill and complete a well within six months, and in case of failure to do so to pay to plaintiff $260 within three months thereafter. Upon the expiration of the nine months, plaintiff forfeited the lease, but subsequently brought his action for damages. The court held that the right to damages was lost and said in part:

''In this case it was the act of the lessor which rendered the lease null and void and without effect between the parties. Within six days after his right of action accrued, and without demanding payment of the sum sued for, he let the premises to the Philadelphia Company for a term of twenty years. This was prompt, plain decisive election by him to enforce the forfeiture clause, and thenceforth the lease was a nullity and the rights and liabilities arising from it were extinguished.''

In the case of Indiana Oil etc. Co. v. McCrory, 42 Okl. 136, 140 Pac. 610, to which we are cited, damages were claimed for improper drilling on a developed piece of oil land. That case, therefore, has no bearing on this. The case of Keppner v. Lemon, 176 Pa. St. 502, 35 Atl. 109, 197 Pa. St. 430, 47 Atl. 353, presents an action for specific performance to compel the drilling of future wells and for damages arising by reason of draining oil from the land in question by other wells placed within a few feet of the dividing line. The land was known to contain oil and had one producing well thereon. After all the oil had been drained from the land, the lessee surrendered the lease, and the court held that the lessor should be compensated for the oil that had been drained away by the wells on the adjoining land. It will be noted that the lessor did not ask any rescission, but that this was in fact made by the lessee, and the decision can probably be further explained on the theory, if on no other, that the court allowed the damages in order to put the parties in *statu quo*—a principle generally ap-

plicable in cases of rescission. And this brings us to that phase of the case wherein the plaintiffs allege that defendant drilled and developed wells on adjoining lands, thereby draining oil from under the lands of plaintiffs, and we must inquire, as to whether or not a state of facts has been presented which might require an allowance of damage by reason thereof in order to put the plaintiffs in *statu quo*. We think not, for several reasons, and without reference to the fact as to whether any proper method of measuring damages exists in a case like this, and without deciding as to whether under the proper pleadings such damages might be recovered where lessor rescinds the lease. In the first place, it is evident that it must appear, in order to recover any damages at all, that the land contains oil or gas which could and would have been obtained and utilized by putting down a well. (Springer v. Gas Co., 145 Pa. St. 430, 436; 22 Atl. 986; Duff v. Bailey, 29 Ky. L. 919, 96 S. W. 577.) There is no direct allegation in the pleadings of plaintiff that the land in question is oil bearing, but if we concede that, for the purposes of a demurrer, the allegation that defendant drained oil therefrom should be considered sufficient for that purpose, still the other requisite facts above mentioned do not appear. Without a covenant to drill the defendant could not, of course, be held liable in any event, but, further, drilling does not necessarily mean that oil or gas will be found. Defendant, under the agreement, was not compelled to drill, at least the main well, beyond a depth of 3000 feet. There is nothing in the pleadings that informs us as to whether or not oil or gas could have been obtained at that depth, or in fact whether it was at all feasible to obtain and utilize it by drilling to any depth whatever. Again, the covenant did not specify the time within which the well, or wells, should be completed. In such case, the law would imply a reasonable time, and it is too clear to need argument, that defendant could in no event be held responsible until such reasonable time had elapsed. It had 90 days from July 11th, 1916, in which to erect a derrick. We are left absolutely in the dark as to what would have

been a reasonable time in which to have completed the well. From all that we know from the record before us, that time might not yet have elapsed. We cannot take judicial notice of such reasonable time. The varying fortunes in the oil fields, the differences existing in the strata of the earth in different localities, the accidents and contingencies arising which must be taken into consideration, necessarily forbid. Hence we have nothing before us from which we could say that the plaintiffs have been damaged. Finally, the plaintiffs allege, in substance, that after the default of defendant, the parties considered the lease as void and defendant attempted to get another lease which plaintiffs refused to give; that plaintiffs rescinded and forfeited the lease and that thereupon plaintiffs stated that it had "forfeited" the lease, and had no further rights therein. The plaintiffs, in this rescinding, reserved no rights. It would seem that these facts, although defendant did not release the leases of record, present a case of mutual rescission without reservation of any rights. If one party rescinds a contract, and the other consents thereto, or does not object thereto, the rescission is by mutual consent. (Ralya Adm'r. v. Atkins & Co., 157 Ind. 331; 61 N. E. 726; Bannister v. Reed, 6 Ill. 92; Shaffner v. Killian, 7 Ill. App. 620; Cromwell v. Wilkinson, 18 Ind. 365.) And in such case, the claims of the parties against each other arising out of the contract, unless reserved, are generally barred. (Fullager v. Reville, 3 Hun. 600; McCreery v. Day, 119 N. Y. 1, 23 N. E. 198, 6 L. R. A. 503; Eames v. Prosser, 157 N. Y. 289, 51 N. E. 986; Thomas v. Smoot, 2 Ala. App. 407, 56 So. 1; Ralya, Admr. v. Atkins & Co., supra.) In the case of McCreery v. Day, cited above, the court said:

"When a contract is rescinded while in the course of performance, any claim in respect to performance, or of what has been paid or received thereon, will ordinarily be referred to the agreement of rescission, and in general no such claim can be made unless expressly or impliedly reserved upon the rescission."

It follows, from what we have said, that the allegations claiming damages in the first amended petition were properly stricken out (Timmerman v. Stanley, supra), if that is material at all on this hearing, and that the demurrer was properly sustained as to the third and fourth causes of action of the second amended petition. The judgment rendered in the court below should accordingly be, and the same is hereby, affirmed.

*Affirmed.*

POTTER, C. J., and KIMBALL, J., concur.


ON PETITION FOR REHEARING

BLUME, Justice.

The plaintiffs, plaintiffs in error here, have filed a petition for rehearing and have set up various different grounds therefor. Without taking them up separately, we shall take up the substance of them briefly.

1. Counsel thinks that the principle of election of remedies is not applicable to the case. Among other things he states that the principle does not apply to leases "A" and "C," meaning both leases, except the ratification agreement of the first lease. We cannot at all understand this argument. This principle is applied in the original opinion only, to the ratification agreement, that only containing a covenant to drill. Hence we shall not refer to this matter further. As to the ratification agreement, containing the covenant, the points made seem to be as follows: (a) That it is like a case where a man leases land for $1000, of which $500 is paid down and the balance of $500 to be paid later; that the court by its decision deprives plaintiffs of the payment of the last installment. Without conceding that the situations are alike, the trouble with the argument is that plaintiff insists upon both the payment as well as the cancellation of the lease, two remedies which, under the agreement in the case at bar, we have shown are inconsistent. Counsel says there is no inconsistency. He cites no authority, and takes his position in face of all the authorities cited

by us, which we believe are sound in principle. We must, therefore, let the opinion speak for itself on that point. (b) Counsel says that it was of no disadvantage to defendant to have the leases cancelled; that a man cannot be damaged by having a lease cancelled which he has voluntarily abandoned, and that hence there is no inconsistency between allowing both damages as well as cancellation of the leases. This, he claims, is the situation here. Without deciding what part resulting damages plays in the doctrine of election of remedies, we may say that we think that counsel mistakes the effect of his own pleading. That shows that plaintiffs rescinded the lease; defendant recognized that it no longer had any validity and wanted a new lease or renewal, which plaintiffs refused to give. That does not show voluntary abandonment. But if it did, then since plaintiffs also considered and agreed that the lease was and should be void, the case would present a rescission by mutual agreement. In either view, therefore, plaintiffs cannot recover on the covenant, as we fully showed in the original opinion. We cannot go over that ground again, since counsel has presented no authorities or valid reasons to the contrary.

2. The other claim of defendant is that plaintiff should have damages because defendant failed to release of record the leases entered into. The points made, if we understand counsel, are substantially these: (a) that the remedy in equity granted by the law is not sufficient; plaintiffs should have damages in addition; that though the common law grants no such additional remedy, we should give one; though other courts have not done so, we should do so. That this would be judicial legislation is plain. (b) The second lease, first given to Paul, counsel say was void *ab initio;* that we held that to record a void instrument is actionable as slander of title. We did not so hold. We cited several cases, to which our attention had been called by counsel, which hold that where a party maliciously puts of record a void instrument affecting title to property, he is guilty of defamation of title. There is no claim, allegation or pre-

tense here that the putting on record of the Paul lease was
malicious. Malice in the publication is essential. That is
absent here. (c) It is therefore unnecessary to again go
into the matter of pleading special damages in an action
for defamation of title. Let us, however, add a few re-
marks. Counsel seems to think that contrary to the prin-
ciple of construing pleadings liberally, we have adopted a
narrow construction, and have sought to seek out matters
of defense. He seems to overlook the fact that the damages
claimed herein do not necessarily and logically flow from
the wrongs alleged. If any were suffered, they are special,
and in such case the rule is universal, and is not confined
to actions for slander of title, that they must be particularly
averred. (17 C. J. 1002); The facts showing how the
special damages claimed arose must be stated (17 C. J.
1003) in order to apprise the adverse party so as to put him
in position to properly meet the question by opposite proof,
if he has any. Hence when plaintiff simply alleges that he
has been damaged by reason of the failure to release the in-
struments of record without stating the facts upon which
that loss is based and the amount thereof, the pleading is
not merely indefinite, but in such case there is a total want
of sufficient allegations. True, plaintiff says that he was
prevented to consummate the sale to Martel & Lee; but
that itself is of no importance; there must be a pecuniary
loss to plaintiff. (25 Cyc. 561.) In May v. Anderson, 14
Ind. App. 251, 42 N. E. 946, for instance, where plaintiff
was prevented from selling his land for $200, more than
it was worth, it was held that he was entitled to recover
this $200. There is no sufficient allegation of pecuniary
loss in the pleadings here. It may, for aught that appears,
have been fortunate for plaintiffs that they were not able
to consummate the sale. Perhaps the land was at the time
worth many times, and may be worth many times today,
what the contract price to Martel & Lee was, and the very
act of defendant of which counsel complains may, for aught
that appears in the pleadings, have made the plaintiff in-
dependently wealthy. The general principles above stated

apply also to the pleadings in connection with the draining of oil from plaintiff's land, which subject we fully covered in the original opinion.  No fault in that reasoning there applied has been pointed out to us by counsel.

A rehearing herein is accordingly denied.

*Rehearing denied.*

POTTER, C. J., and KIMBALL, J., concur.